KANSAS CITY v. BACON et al., Appellants.

**In Banc, June 30, 1900.**

1.  **Benefit Assessments:** CHARTER: INSTRUCTIONS AS TO CITY'S AND
    INDIVIDUAL BENEFIT. The city charter required the jury in estimat-
    ing the benefits arising from the establishment of a park, to "esti-
    mate the amount of benefit to the city at large inclusive of any ben-
    efit to the property of the city," and then to estimate the benefit to
    the property of the individual. *Held*, that this charter requires
    the benefit to the city in general, and to its property, to be as
    "direct, certain and proximate" as the benefit the improvement
    brings to the individual's property, and therefore an instruction
    which directed the jury "in estimating the benefits that may accrue
    to the city and to the public generally, or to any property in the
    benefit district by reason of the proposed improvement, to consider
    only such benefits as are direct, certain and proximate," was not
    error, as ignoring and disregarding the settled differences between
    general taxes and local assessments. The benefit to the city and
    its property is not affected by the difference between general and
    special taxation. The benefits are derived from the improvements,
    and not from the taxes, and are the same kind, whether paid for
    out of the general revenue or by special tax or by donation to the
    city.

2.  ———: ———: ———: UNJUST RESULT: CONSTITUTION. That
    part of the United States Constitution which guarantees to every
    person the equal protection of the law, is not violated in a proceed-
    ing in a State court which is conducted fairly and in accordance
    with a charter provision fair on its face, simply because the result
    reached seems unjust.

3.  ———: ONE DOLLAR AGAINST CITY: $3,252.49 AGAINST INDIVIDUAL.
    In a proceeding to establish a park of 134 acres in Kansas City,
    the total amount of money assessed as the value thereof to be paid
    to the owners was $870,759.60, and the assessment on the lot of one
    of the defendants was $3,252.49, and the amount assessed against
    the city for general benefits was $1. *Held*, that, as the case was
    submitted to the jury under proper instructions, this court can not
    say as a matter of law that the assessment of a mere nominal ben-
    efit to the city was unlawful. Whether or not the use is an actual
    benefit to the public or to the individual property owner, is a ques-
    tion of fact for the jury.

4. ———: ———: ———: WEIGHING EVIDENCE: FLAGRANT ABUSE OF LEGAL PROCESS. Where the appellant did not object in his motion for a new trial that the assessment of a merely nominal benefit to a city was so unjust and unequal as to be a flagrant abuse of legal process, and that it was due to the fact that the city had reached its limit of taxation under the Constitution and had no funds with which to pay a proper assessment, but makes such complaint for the first time in this court, this court will not interfere if there is substantial evidence to support the verdict. Such objection should have been made first in the trial court.

5. ———: OMITTING RAILROADS, CHURCHES, SCHOOLS, HOSPITALS. It is for the jury to say, in a proceeding to establish a park in a big city, whether or not property belonging to railroads, churches, hospitals, schools, etc., situated within the benefit district, is in fact benefited and therefore, whether or not it should be assessed for benefits. The power to assess implies the power to omit from assessment.

6. ———: INEQUALITIES. It can not be declared as a matter of law that a benefit assessment of $2 per front foot against a lot adjoining the park, and one of $50 per front foot against a lot a mile away, is such inequality as to make the whole assessment unlawful.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

AFFIRMED.

*F. M. Black, Brown, Chapman* and *Brown, Warner, Dean, McLeod & Holden, Langston Bacon* for appellants.

(1) The eleventh instruction, given at the request of Kansas City, is erroneous in this, that it does not properly define the benefit to the city at large. Newby v. Platte County, 25 Mo. 258; Garrett v. St. Louis, 25 Mo. 505; Sheehan v. The Good Samaritan Hospital, 50 Mo. 155; Neenan v. Smith, 50 Mo. 528; Kansas City v. Morton, 117 Mo. 446; Cooley on Tax. (2 Ed.), p. 606; Macon v. Patty, 57 Miss. 378; Kansas City v. Bacon, 147 Mo. 299; Norwood v. Baker, 172 U. S. 269; Zoeller v. Kellogg, 4 Mo. App. 163; Loeb v. Trustees, 91 Fed. Rep. 37; Fay v. Springfield, 94 Fed. Rep. 409; Charles v. Marion, 98 Fed. Rep. 361; Hutchinson v.

Storrie, 51 S. W. 848; Sears v. Street Com., 53 N. E. 876; (2) The instructions, verdict and judgment violate the 14th amendment to the Constitution of the United States. Yick Wo v. Hopkins, 118 U. S. 356; Railroad v. Chicago, 166 U. S. 226; Holden v. Hardy, 169 U. S. 366. The question last cited, being in the record, may be raised in this court. Oxley Stave Co. v. Butler, 166 U. S. 648; Scott v. McNeal, 154 U. S. 37; County, etc. v. Railroad, 13 Fed. Rep. 145; Giozza v. Tiernan, 148 U. S. 657. (3) The judgment should have been arrested and should now be set aside without regard to the erroneous instructions. Sears v. Street Com., 53 N. E. 876; Hanscom v. Omaha, 11 Neb. 37; Dietz v. Neenah, 91 Wis. 422; Halpin v. Campbell, 71 Mo. 493; Corrigan v. Gage, 68 Mo. 541; Johnson v. Milwaukee, 40 Wis. 324; Watkins v. Zwietusch, 47 Wis. 513. (4) The benefits laid against appellants' property were not special benefits, but were general benefits, and for this reason they were invalid. Lewis on Em. Dom., sec. 476; Roberts v. Board of Com., 21 Kan. 251; Railroad v. Chrystal, 25 Mo. 546; Railroad v. Richardson, 45 Mo. 468; Corrigan v. Gage, 68 Mo. 541; Thomas v. Gain, 35 Mich. 135; Vreeland v. Jersey, 43 N. J. L. 135; Dillon on Mun. Corp. (4 Ed.), sec. 809; Hook v. Railroad, 133 Mo. 313; Village of Morgan Park v. Wishall, 40 N. E. 611; Hickman v. City of Kansas, 120 Mo. 122; Hanscom v. Omaha, 11 Neb. 37; Toledo v. Brown, 2 O. N. P. 45; Trosper v. Commissioners, 27 Kan. 391; Allen v. Charleston, 109 Mass. 273; Hilburn v. County of Suffolk, 120 Mass. 399; Farwell v. Cambridge, 11 Gray 413. (5) Private property can not be assessed several times for special benefits for the same kind of improvements located in different parts of the city. Trosper v. Commissioners, 27 Kan. 394; Halpin v. Campbell, 71 Mo. 493; Railroad v. Unsicker, 22 Ill. 221. (6) The question whether a given tax is one for a purpose general or local in its character is a question for the determination of the courts.

Thomas v. Gain, 35 Mich. 135; Chicago v. Blair, 149 Ill. 310; Norwood v. Baker, 172 U. S. 269; Village of Morgan Park v. Wishall, 40 N. E. 611; Choteau v. Leffingwell, 54 Mo. 469; Wells v. City of Weston, 22 Mo. 384. (7) There is no evidence in this case to sustain this verdict. The evidence introduced by the park board to establish that appellants' property remotely located from the park was specially benefited, wholly failed to prove it. The benefits shown by the testimony were those which were general in their character, and nothing more. Hook v. Railroad, 133 Mo. 313. (8) The schedule of benefits appear to be arbitrary throughout, and for that reason should be set aside. Johnson v. Milwaukee, 40 Wis. 324; Watkins v. Zwietusch, 47 Wis. 513. (9) The verdict of the jury should be set aside because of the omission of property subject to local assessment. Elliott on Roads and Streets, p. 403; Railroad v. Decatur, 147 U. S. 190; s. c., 126 Ill. 92; Railroad v. Moline, 158 Ill. 64; Railroad v. Kankakee, 164 Ill. 608; 28 L. R. A. 249; Scammon v. Chicago, 42 Ill. 192; Chicago v. Baer, 41 Ill. 306; Parmalee v. Chicago, 60 Ill. 267; Dyer v. Harrison, 63 Cal. 447. See, also, dissenting opinion in Kansas City v. Bacon, 147 Mo. 283. (10) There was no examination of the benefit district beyond that in the vicinity of the park; the jury did not consider it in making up their verdict; and for that reason the verdict in that respect was arbitrary and oppressive. Johnson v. Milwaukee, 40 Wis. 324; Watkins v. Zwietusch, 47 Wis. 513. There are no presumptions in favor of these proceedings. Railroad v. Winnebago County, 89 Wis. 435; Kiley v. Oppenheimer, 55 Mo. 376; Bruin-Bambrick Construction Co. v. Geist, 37 Mo. App. 514; County Court of St. Louis v. Griswold, 52 Mo. 176. (11) The instructions given to the jury for determining the value of the real estate taken were erroneous and conflicting. Kansas City v. Bacon, 147 Mo. 283.

*D. J. Haff* for respondent.

(1) The eleventh instruction given at the request of Kansas City is not erroneous.    It correctly defines the rule upon which benefits in these proceedings must be assessed, whether to the city at large, the property of the city, or to the individual property owner within the benefit district. Charter of Kansas City, article 10, section 15; Kansas City v. Morton, 117 Mo. 446; Garrett v. St. Louis, 25 Mo. 511; Newby v. Platte Co., 25 Mo. 271; Sheehan v. The Good Samaritan Hospital, 50 Mo. 158; Neenan v. Smith, 50 Mo. 529.    (2) The word "benefits" as used in the charter provision in question means benefits to property, the enhancement of its value.    They must be tangible, capable of being estimated and measured with a reasonable degree of certainty, otherwise they can not be assessed either against the city at large, or the property within the benefit district. Charter of Kansas City, article 10, sec. 15; Garrett v. St. Louis, 25 Mo. 511; Kansas City v. Morton, 117 Mo. 457; Newby v. Platte County, 25 Mo. 271; Sheehan v. The Good Samaritan Hospital, 50 Mo. 158; Neenan v. Smith, 50 Mo. 529; McCormack v. Patchin, 53 Mo. 36.    (3) No question of the violation of the Fourteenth Amendment to the Constitution of the United States can be raised in this court upon the record in this case. The evidence supports the instructions, the verdict and the judgment, and the motions for new trial do not complain either; first, that the amount assessed against complainants' property was in excess of the benefits to such proprerty, or, second, that the amount of benefits to the city at large were in excess of the amount assessed against the city by the verdict of the jury.    Village of Norwood v. Baker, 172 U. S. 269; Kansas City v. Bacon, 147 Mo. 259.    (4) The use of land for a park is a "public use" and a "local improve-

ment" justifying special assessment against private property benefited to pay compensation therefor. Kansas City v. Bacon, 147 Mo. 273; Kansas City v. Ward, 134 Mo. 172; Shoemaker v. U. S., 147 U. S. 302; Owners of Ground v. Mayor of Albany, 15 Wend. 376; Holt v. City Council of Somerville, 127 Mass. 413; Foster v. Park Commissioners, 133 Mass. 338; Matter of Commissioners Central Park, 63 Barb. 282; State v. Dist. Court of Hennepin Co., 33 Minn. 235; Kedzie v. West Chicago Park Coms., 114 Ill. 280; Brooklyn Park Coms. v. Armstrong, 45 N. Y. 234; Briggs v. Whitney, 159 Mass. 97; People v. Brislin, 80 Ill. 423; Dunham v. People, 96 Ill. 331; R. S. of Illinois 1874, chap. 105, p. 733. "The quantity of land to be taken for public use is not a judicial but a legislative question." U. S. v. Railroad, 160 U. S. 669. (5) The determination as to whether private property is benefited and the amount of such benefits are mere questions of fact for the jury, and an appellate court will not interfere with the report of the commissioners except in the case of gross error, prejudice or corruption. Kansas City v. Bacon, 147 Mo. 281; City of Kansas v. Baird, 98 Mo. 217; Kansas City v. Morton, 117 Mo. 446; Shoemaker v. U. S., 147 U. S. 306; Mills on Eminent Domain, 246; Owners of Ground v. Mayor of Albany, 15 Wend. 377; Matter of Extension of Church Street, 49 Barb. 455. (6) The method pursued by the jury in making an *ad valorem* assessment of benefits is in accordance with and is permitted by the charter of Kansas City, and has been uniformly upheld by the decisions of this State as not in conflict with the Constitution. Charter of Kansas City, art. 10, sec. 16; Laws 1849, p. 519; Lockwood v. St. Louis, 24 Mo. 22; Newby v. Platte Co., 25 Mo. 270; Morrison v. Morey, 146 Mo. 543; Garrett v. St. Louis, 25 Mo. 510; Kansas City v. Ward, 134 Mo. 186; Kansas City Grading Company v. Holden, 107 Mo. 310. (7) The finding and assessment of benefits against the city by the jury in this

case to the amount of one dollar was permissible and lawful, and affords no right or justification for interference by the appellate court. Kansas City v. Smart, 128 Mo. 274; Kansas City v. Bacon, 147 Mo. 279; Kansas City v. Holden, 107 Mo. 312; Cooley on "Taxation" (2 Ed.), 164. (8) In their verdict the jury found certain property within the benefit district not benefited and did not assess the same with benefits. This was their right and duty; they had no authority to assess property which they did not deem benefited, nor does the charter contemplate that all property within the benefit district may necessarily be benefited. Kansas City v. Bacon, 147 Mo. 281; Kansas City v. Baird, 98 Mo. 220; Kansas City v. Morton, 117 Mo. 453; Scammon v. Chicago, 42 Ill. 192; Owners of Ground v. Mayor of Albany, 15 Wend. 377. (9) Appellants, in their motions for new trial, made no complaint, either; first, that their property was not benefited in the amount assessed against it; or, second; that the assessment of one dollar against the city was too small or that the city was not assessed with the full amount of benefits which it received from the improvement. An appellate court will not consider grounds for reversal of judgment which have not been specified in the motion for new trial. Kansas City v. Bacon, 147 Mo. 259; Carver v. Thornhill, 53 Mo. 283; Putnam v. Railroad, 22 Mo. App. 589. (10) Benefits are none the less special and peculiar because they may extend in common to a large number of tracts of property. Allen v. Charlestown, 109 Mass. 246; Hilbourne v. Suffolk, 120 Mass. 394.

*C. O. Tichenor* also for respondent.

(1) It can not be seriously contended that these special assessments are a general tax; the fact that lot owners are here by appeal shows that they are not. These assessments are judgments. The fact that the jury arrived at their

verdict by means of a rate of per cent upon the city assessment, does not make it a general tax. Egyptian Levee Co. v. Hardin, 27 Mo. 495; Morrison v. Morey, 146 Mo. 543; McGhee v. Mathias, 21 Ark. 40; Bond v. Phillips Co., 4 Dill. 216; Daily v. Swope, 47 Miss. 389. (2) The 14th amendment.—No point was made in reference to it below. The question is not what is the practice of the Federal court, but of this court in this regard. "It is sufficient if it appears that a constitutional question was involved in the issues in the case and that the trial court passed on the question." Ash v. City, 145 Mo. 125. Counsel claim that this amendment is violated because certain instructions "give an erroneous and improper definition of benefits to the city at large" by reason whereof the verdict against appellant's lots are greater than should be, and that if they should be enforced, appellants will be deprived of their property without due process of law, and will be deprived of the equal protection of the laws. In plain language, this is simply saying that the verdicts are excessive, due to the fact that the jury were erroneously instructed. It may be that all this circumlocution is needed because the motions for new trial neither claim that the verdicts against the lots were excessive nor that the verdict against the city was too small. If position of counsel is correct we do not see why the Federal court should not review all cases which come to this court. Railroad v. McClure, 10 Wall. 575; Life Ins. Co. v. Nudles, 113 U. S. 575; N. O. Waterworks Co. v. La. Sugar Co., 125 U. S. 18; Parsons v. Dist. Columbia, 170 U. S. 51; Billingham & Co. v. New Whatcome, 172 U. S. 320; Railroad v. Pa., 134 U. S. 237; McMillan v. Anderson, 93 U. S. 37; Davidson v. N. O., 96 U. S. 97; County of Mobile v. Kimball, 102 U. S. 703; Kelly v. Pittsburg, 104 U. S. 78; Hagar v. Reclamation Dist. No. 108, 111 U. S. 701; Warbs v. Hoagland, 114 U. S. 606; Kentucky Railroad Tax cases, 115 U. S. 338; Spencer v. Merchant, 125 U. S. 345; Walston

v. Nevin, 128 U. S. 578; Huling v. Railroad 130 U. S. 559; Palmer v. McMahon, 133 U. S. 660; Lent v. Tillson, 140 U. S. 316; Shoemaker v. U. S., 147 U. S. 282; Railroad v. Decatur, 147 U. S. 207; Paulson v. Portland, 149 U. S. 30; Railroad v. Bristol, 151 U. S. 570; Montana Co. v. St. Louis Co., 152 U. S. 171; Merchant v. Railroad, 153 U. S. 380; Railroad v. Backus, 154 U. S. 426; Origet v. Hedden, 155 U. S. 238; Eldridge v. Trezerant, 160 U. S. 452; Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 113; Railroad v. Chicago, 166 U. S. 226; Bauman v. Ross, 167 U. S. 588; Wilson v. Lambert, 168 U. S. 614; Castillo v. McConnico, 168 U. S. 674; Parson v. Dist. of Columbia, 170 U. S. 45; Williams v. Eggleston, 170 U. S. 304; B. B. Co. v. New Whatcome, 172 U. S. 314; Dewey v. Des Moines, 173 U. S. 195.

VALLIANT, J.—Appeal from a judgment of the circuit court of Jackson county assessing benefits against property of the defendants in the proceedings to establish Penn Valley park in Kansas City.

For the establishing of the park 134 acres of land were condemned and the total amount assessed as the value thereof to be paid the owners was $870,759.60, and for the payment of that amount assessments as of benefits were made on a large number of lots included in what is known as West Park district, among which were lots owned severally by defendants Bacon and Monroe. The assessments on the lots of Mrs. Bacon aggregate $3,252.49; those on the lots of Monroe, $991.17. The amount assessed against the city as general benefits was $1.

As the constitutionality of the law under which the proceedings were had is questioned, as well as the conformity of those proceedings to the law, a brief recital of its requirements will be necessary.

Under article 10 of the charter of the city there is a board of park commissioners whose duty it is, *inter alia,* to devise and adopt a system of public parks "for the use of the city and its inhabitants and to select and designate lands to be used and appropriated for such purposes, . . . . . . . and by and with the approval and authority, by ordinance, of the common council, to lease, purchase, condemn or otherwise acquire in the name of the city, land for parks," etc.   By section 7 of that article the city is divided into three park districts whose boundaries are defined, of which West Park district is one.

Section 8:   "It shall be the duty of the board of park commissioners to provide at least one park in each park district and to purchase or otherwise acquire with the concurrence of the common council as herein provided, real estate therefor; and the common council is hereby authorized and empowered to provide by ordinance for the purchase, condemnation or otherwise obtaining of land" for parks, etc., provided "the same be first recommended by the board of park commissioners.   And . . . . . . . it shall be the duty of the common council upon such recommendation to proceed forthwith, by ordinance, to provide for the establishment" of the park, etc., payment for the same to be made out of the general funds or by issue and sale of bonds, or "as hereinafter provided."

Section 9 provides that the parks in any district, "whether acquired by purchase or condemnation, may be paid for by special assessments upon the real estate therein found benefited thereby as hereinafter authorized."

Section 10:   "Whenever the common council, upon the recommendation of the board of park commissioners, shall provide by ordinance for the purchase or condemnation of any real estate selected for a park . . . . . . . and it becomes necessary to take or damage any private property for any such purpose, said common council shall by ordinance, de-

scribe the private property to be purchased, taken or damaged; and in case the same is to be paid for by special assessments upon real estate, shall designate the time and mode of payment of such assessments, and shall also prescribe the limits within which private property shall be deemed benefited by the proposed improvement, and be assessed and charged to pay compensation therefor, which benefit district may include one or more park districts or part or parts of such district or districts." The section then goes on to direct how the ordinance shall describe the property to be affected and the duties of the officers in relation to the proceedings and the institution of the suit in the circuit court of the county.

Section 11 provides that upon the filing of a copy of the ordinance in the circuit court, the court will appoint a day for the impanelling of a jury to assess the damages and benefits and give notice thereof by publication.

Sections 12, 13 and 14 relate to matters of further detail of procedure, unnecessary to mention here.

Section 15, relating to assessments of benefits, provides that the jury "shall estimate the amount of benefit to the city at large, inclusive of any benefit to the property of the city, and shall estimate the value of the benefit of the proposed improvement to each and every lot, piece and parcel of private property, exclusive of the buildings and improvements thereon, within the benefit district, if any benefit is found to accrue thereto; and in case the total of such benefits, including the benefits assessed to the city at large, equals or exceeds the compensation assessed, or to be paid for the property purchased, taken or damaged, then said jurors shall assess against the city the amount of benefits to the city as aforesaid, and shall assess the balance of the cost of such improvements against the several lots and parcels of private property found benefited, each lot or parcel of ground to be assessed with an amount bearing the same ratio to such

balance as the benefit to each lot or parcel bears to the whole benefit to all the private property assessed."

Section 16 prescribes the form of the verdict and directs that "the city engineer and city assessor or their assistants shall when required, aid said jury of freeholders to put its verdict in proper form; and said jury may use the books, plats and records in the office of the city assessor for such purpose, and if the jury shall find that any number of tracts or parcels of land within the benefit district are benefited ratably in proportion to the assessed value thereof as shown by the books of said assessor they may so assess the same." It also provides for a review of the verdict by the court on its own motion or the motion of a party interested, filed within four days and for setting the verdict aside for good cause and further proceedings.

Section 17 directs the form of the judgment.

Section 18 gives an appeal to a party aggrieved, which with a bond for costs, suspends the judgment until the cause is disposed of in this court.

The proceedings in this case were designed to be conducted in conformity with these provisions of the city charter. A large number of instructions were given, some of the court's own motion and others at the instance of the parties respectively, designed to cover every feature of the case both as regards the assessment of damages for the property taken and of benefits to pay for the same. It will not be necessary to copy these instructions in full in this opinion but only those of which complaint is made. There were motions for new trial and in arrest of judgment by the defendants Bacon and Monroe, which were overruled, and this appeal was taken.

I. The point against which the main force of appellants' argument is directed is instruction 11 given at the request of the city, and which is:

"11.    By your verdict you shall show a correct description of each piece or parcel of property taken and the value thereof, and of each piece or parcel of private property damaged and the amount of injury thereto.    You shall also show by your verdict the amount, if any, assessed against the city, and shall show the amount of benefits assessed against each piece or parcel of private property found benefited within the benefit district.

"In estimating the benefits that may accrue to the city and to the public generally, or to any property in the benefit district by reason of the proposed improvement, you shall consider only such benefits as are direct, certain and proximate."

This instruction was contained in Kansas City v. Smart, 128 Mo. 272, which was a case having in several respects points in common with this, but the correctness of the instruction was not particularly questioned, and it was not especially passed on by the court.    Counsel for respondent in their brief say that it has been a standard instruction in every condemnation case that has occurred in Kansas City within memory, and that it has frequently passed unchallenged in this court.

It was contained in the record in Kansas City v. Bacon, 147 Mo. 259, and the same criticism was then made of it by counsel that is here made, but inasmuch as the exceptions of appellants in the trial court in that case did not cover it, it could not be then considered.    The exceptions however cover it now and if the objection now made to it is valid it goes to the life of the verdict.

It is the last paragraph of the instruction that is complained of, concerning which counsel for appellants in their brief say:    "This instruction, it will be seen, makes no distinction between 'benefits that may accrue to the city and to the public generally' and benefits 'to any property in the

benefit district.'   It ignores and disregards the well settled differences between general taxes and local assessments."

The distinction upon which is founded the right of general taxation and that of special taxation is pointed out in Newby v. Platte Co., 25 Mo. loc. cit. 271, with as much clearness as in any of the other authorities cited by counsel. In that case the court per LEONARD, J., said: "A system of taxation framed exclusively with a view to a just distribution of the burdens of government among its citizens would require that each should contribute in proportion to the benefit he received. But as the amount of benefit each derives from the general expenditures of the government can not be ascertained with any reasonable certainty, the benefit received can not be adopted as a standard for the apportionment of general taxation........In local taxation, however, for local objects, the personal benefit to each, it is supposed, may be seen and estimated with a reasonable degree of certainty, and, therefore, in such assessments, it is deemed fair that each should contribute in proportion to the benefit. .......And we remark in this connection that there is a marked difference between general taxation and special assessments for local objects."

In the lengthy and able opinion from which the above extract is taken we are shown that there are two kinds of taxation, both emanating from the taxing power of the government, but each resting on a different principle, the one aimed to raise a revenue for general governmental purposes, the other to raise a fund to be devoted to a particular purpose.   The one for its justification leaves out of view the question of individual benefit, merging the individual in the community; the other for its justification advances the theory that the individual is benefited by the improvement contemplated, and because of his benefit he must contribute to the cost.   The State, but for the restrictions it has seen fit to throw around itself by the Constitution, has full power to tax

all property within its borders for all purposes appertaining to a general sovereign, including public improvements. But the State in its sovereignty has seen fit to limit the taxing power it has delegated to its municipalities and make the classes of general and special taxation above mentioned. By the limitation in the authority so delegated Kansas City can not levy a tax for the general purposes of municipal government nor to pay for improvements beyond a certain per cent *ad valorem*. And whilst it has power under charter restrictions to appropriate the revenue derived from general taxation as its common council may see fit, yet so far as they may depend on payment out of the general revenue, improvements, however much needed, must be given up if they cost more than a wise administration of that general revenue can afford. It was to meet this emergency that special taxation, on the theory of contributing to the payment for special benefits resulting to particular property from the improvement, was authorized. Under that theory if there are especial benefits appreciable and susceptible of reasonable measurement, the cost of the improvement is to be apportioned ratably among the recipients of the benefits, the city bearing its part and the individual property owners their parts. Before making this apportionment the fact that there are benefits to be derived from the contemplated improvement, and the extent of those benefits must be ascertained, not of course to a mathematical or absolute certainty, but reasonably so.

The law contemplates that a public improvement may bring a benefit to the property of individuals separate from that which it brings to the city in general, and that it may bring a benefit to the city in general separate from that which it brings to the property of the individuals, and that when it comes to apportioning the cost, the individuals and the city should each bear the burden in proportion to the respective benefit, but the benefit in the one case must be as "direct, certain and proximate" as in the other.

Kansas City v. Bacon.

The charter requires that the jury "shall estimate the amount of benefit to the city at large inclusive of any benefit to the property of the city," and then estimate the benefit to the property of the individuals. The word "benefit" is there used in three relations, viz.: to the city at large, to the city's property, to the property of individuals. Does it have one significance in one relation and a different in another? Does it mean in relation to the property of the city and the property of individuals a "direct, certain and proximate" benefit, but in relation to the city at large an indirect, uncertain or remote benefit? If so, how can it be calculated? If the charter had provided that the jury should estimate the special benefits accruing to the property of individuals and assess that with special taxes to the amount of the benefits, and assess the balance of the cost of the improvement against the city it would have very greatly simplified the task; but it is doubtful if it would have been as just, because the individuals would in that event have to pay the full amount of the benefit to them before the city could be called on at all, whereas if the city at large is benefited and that benefit can be ascertained and measured with as reasonable certainty as that of the individuals, it should be made to share the cost, so that the individuals might not be taxed to the full amount of the benefits they receive. These benefits, both as to private property and to the city at large, are to some extent necessarily uncertain. They are estimates of the present effect on the market of the future results of the contemplated improvement, and if there is any difference in the task of estimating the benefits to one or the other, it is only in the degree of the difficulty. The question, how much is the benefit to the city at large and how much to the private property, is not a question of taxation either general or special. It is an inquiry as to facts which, when ascertained, may be made the basis of taxation, but ascertaining the

Vol. 157 mo—30

amount of benefits is one thing and assessing the tax is another.

The argument that because a general tax is not founded on a previously ascertained benefit and because that part of the cost of an improvement that is assessed against the city is paid out of its general revenue, therefore there should be a different rule laid down in the instruction to the jury in relation to ascertaining the amount of benefit to the city from that given for ascertaining the benefit to private property, seems to be founded in a confusion of the subject of benefits with that of taxation. Counsel commenting on the instruction that the jury should consider only such benefits as are "direct, certain and proximate," say: "These are elements that enter into all local assessments, but the benefits derived from general taxes are neither direct, certain nor are they proximate." The benefits are not derived from the taxes; special taxes are levied to pay for the benefits, but the benefits are derived from the improvement, and are the same in kind, whether paid for out of the general revenue or by special tax or by donation to the city.

Conceding all that the learned counsel say concerning the difference between general and special taxation, we do not see how it affects the question relating to the character of the benefits the city is required to pay for in a case like this. And if it is lawful for the jury to estimate the benefit to the city at large with a view to charging a proper share of the cost of the improvement to the city and thereby to that extent relieve the burden of the property owners; that is to say, if that feature of the law which contemplates laying a portion of the burden on the city at large is not in violation of the fourteenth amendment to the Constitution of the United States, then there must be some rule to guide the jury in assessing those benefits, and if it is not proper to instruct the jury that the only benefits to the city at large which they are to consider are such "as are direct, certain

and proximate," then the contrary is true, and they should be instructed to consider benefits that are indirect, uncertain and remote. We recognize that the task of assessing benefits either to private property or to the city at large is a very difficult one, and that the temptation to the jury to indulge in conjecture is great, but still they ought to be admonished that the law requires them to use their reason and judgment, and not their imagination. The provision of the law requiring the benefits to the city at large to be estimated by the jury should either be eliminated entirely or else the jury should be instructed as to what the law means by such benefits, and if it does not mean such "as are direct, certain and proximate," it is meaningless.

II. A very forceful argument is made to show that the instruction above considered renders the proceedings as they affect these appellants a violation of that provision of the fourteenth amendment to the Constitution of the United States designed to secure to every person the equal protection of the law.

We do not understand the proposition to be that the charter provision itself is in violation of that amendment, but that the effect of the instruction was to convert the otherwise lawful regulation into the means of inequality and oppression. Yick Wo v. Hopkins, 118 U. S. 356, and C., B. & Q. Railroad Co. v. Chicago, 166 U. S. 226, are cited to maintain the proposition that "though the law be fair on its face and impartial in appearance, yet if it be applied and administered by public authority with an evil eye and an unequal hand," it violates the Constitution. We do not doubt that proposition. But that court does not hold that in a proceeding before a State court conducted fairly and in the form of a valid law the Constitution of the United States is violated because the result has been of a character that seems to be unjust. In the case last cited the city of Chicago condemned a right of way for a street over the tracks

of the railroad company and the jury awarded the company one dollar as its damages. The court held that the fourteenth amendment of the Federal Constitution was not violated. In that case the question of damages was submitted to the jury under proper instructions, and they apparently concluded that the damages were nominal, and so returned their verdict, and the court said that was due process of law.

The specific charge of inequality before the law that these appellants make is that the city has been relieved of its just proportion of the cost of the park, and that portion has been laid, together with their own burden, on these appellants. In their brief they say that the jury should first have estimated the benefit to the city at large and should have charged only the balance of the cost as benefits against the private property, that the assessment of one dollar against the city was no assessment at all.

If the case was given to the jury under proper instructions, whatever opinion we may have as to the fact, we can not say as a matter of law that an assessment of merely nominal benefit was unlawful. This has been said before by this court: Kansas City v. Smart, 128 Mo. 274; Kansas City v. Bacon, 147 Mo. 258. And so also have said the Supreme Court of the United States: C., B. & Q. Railroad Co. v. Chicago, *supra*.

Private property can not be taken, under the law of eminent domain, for private use. The city could not create this park otherwise than for the public, that is, for the whole public. It could not, for example, create the park under these proceedings for the exclusive use of the West Park district. Whether or not the use proposed is public, is a question of law for the court; whether or not it is an actual benefit to the public or to individual property owners, is a question of fact for the jury. [Kansas City v. Baird, 98 Mo. 215.] It may be in its nature a public use, yet in

fact no benefit either to the public or to individuals; it might even be a detriment to both. And so it might be a benefit to one and not to the other, or a benefit to both. But those are questions for the jury under proper instructions from the court. If the location of a public improvement is such that, though it is in its nature a public use, its appreciable and measurable benefit is limited to a particular locality—if that is so as a matter of fact—then the court can not say as a matter of law that the verdict of the jury which so declares, converts the proceeding into a violation of the fourteenth amendment. And if when the case reaches the appellate court, the record shows that there was substantial evidence on which the verdict might have been found, the verdict can not be disturbed. There was evidence in this case tending to show that the measurable benefits to come from this park establishment were limited to that portion of the city lying west of Main street.

We do not mean to give countenance to a condition of affairs which the counsel for appellants apprehended exist in this case, namely, that the jury, seeing that the city had reached its limit of taxation under the Constitution and charter and had no funds that could be spared out of its general treasury to pay for parks, for that reason shut their eyes to the fact of real benefits to the city at large and made the nominal assessment as a mere pretext to bring the verdict within the letter and form of the law, while flagrantly violating its true meaning and spirit. It is hoped that the appellate courts will never take refuge in the rule which forbids their weighing evidence, to excuse them in refusing to exercise their authority in a case of flagrant abuse of legal process. But the stage of the proceedings at which the law has made special provision for the interposition of judicial authority to arrest a wrong of that kind, is when the motion for new trial comes on for hearing before the trial court. There are many reasons why that court is better qualified than any

other to deal with that subject, and the more that court is impressed with the weight of its responsibility the better in the long run will be the administration of justice.

Not only was there evidence in this case tending to show that the tangible benefits to result from the establishment of this park were limited to the district west of Main street, but these appellants seemingly acquiesced in that view, at all events after the jury so indicated by its verdict these appellants said nothing to the contrary, and although they urged several reasons why they should have a new trial, that was not one of them.    They gave the trial court no opportunity to set aside the verdict because the benefits to the city at large were assessed as nominal; they said, in their motions, that the damages awarded for the property condemned was too high, that the distribution of the   benefits was unjust, because property in the district that should have been assessed was omitted, but the complaint that the city was not compelled to bear its just share of the cost is made for the first time in this court.

If there were no other interests here involved except those of the city on the one hand and of the appellants on the other, the fact of a failure to make the specific objection in the circuit court might be given no greater weight than a pure technicality requires, but one of the pecularities of this peculiar procedure is that whilst the interests of hundreds of persons are involved, all of whom except these appellants are seemingly satisfied with the judgment, yet these appellants, whose interests aggregate about one-half of one per cent of the amount involved, have the right, expressly given by the charter, to suspend the whole judgment and hang up those large interests by an appeal without bond other than for costs.    No complaint is here implied of the law which gives them this right, and none should be made of them for availing themselves of it, but it is a point not to be overlooked when we are hearing their complaint of unequal pro-

tection of the law, and it is not unreasonable if the other parties interested should insist upon the observance by appellants of even the technical rules of practice which involve such serious consequences and if appellants have failed to make their objection in time in the trial court, object to their making it for the first time here.

Our attention is called to Norwood v. Baker, 172 U. S. 269, decided about the same time we decided Kansas City v. Bacon, and which, it is contended, puts a different view on the subject under discussion than that heretofore held by this court. The facts of that case called very loudly for relief, and we doubt if any court in the land would have refused like relief in a similar case within its jurisdiction. In that case the village of Norwood had taken land for a street out of the center of a block belonging to Mrs. Baker, had gone through the form of having her damages assessed by a jury and paid to her, and then the common council, of its own will, levied a tax on what was left of the block, on an arbitrary basis of so much a front foot, to pay for what was taken and the cost of the proceedings. There was no judicial inquiry into the matter of benefits, and no process of law afforded her. That court said: "It is one thing for the legislature to prescribe it as a general rule that property abutting on a street opened by the public shall be deemed to have been specially benefited by such improvement, and therefore should specially contribute to the cost incurred by the public. It is quite a different thing to lay it down as an absolute rule that such property, whether it is in fact benefited or not by the opening of the street, may be assessed by the front foot for a fixed sum representing the whole cost of the improvement, and without any right in the propertyowner to show, when an assessment of that kind is made or about to be made, that the sum so fixed is in excess of the benefits received. In our judgment, the exaction from the owner of private property of the cost of

a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation."

There is nothing in that strong language in conflict with anything this court has ever said on the subject and nothing to condemn the proceedings of the circuit court which we are now reviewing. The municipal legislature, in the case at bar, under authority of the State, by its ordinance pre-scribed it as a general rule that property within a certain district should be deemed to have been specially benefited by the improvement, and that much that court says it had the right to do. But it did not then proceed to lay it down as an absolute rule that such property, whether it is in fact benefited or not by the improvement, may be assessed by the front foot for a fixed sum representing the whole cost of the improvement. On the contrary, a judicial inquiry was inaugurated in the highest court of original jurisdiction in the State to try the question of whether the property of these appellants was in fact benefited and the extent of the benefit, and ample opportunity was afforded them to show, if they could, that there was no benefit to their property, or if any that it was less than the assessment proposed. It is not unconstitutional, nor do we understand the court in Norwood v. Baker to say it is, for a State to enact that when by due process of law it is ascertained that property in a given district is benefited uniformly it may be assessed for special taxes to the extent of the benefit by a given rate per front foot on the valuation shown by the assessment rolls compiled for general taxation. Such has been the method of special taxation for many years in this and other States, and we see no reason now to condemn it. We approved it in the recent case of Heman v. Allen, 156 Mo. 530.

Various methods of legal procedure to condemn private property for public use and levy special taxes to pay for the

same, have been devised and prescribed by statute in the
different States of this Union.   If any method has yet been
devised, comprehensive enough to embrace in its operations
the condemnation of a large body of land like the one in
question, within the limits of a large city, covering in its
estimate of benefits a district of many thousand city lots, of
all characters and degrees of value, which method insures
absolute certainty in the assessments and at the same time
reasonable hope of termination of the legal proceedings
within the lifetime of the generation which inaugurated it,
such a scheme has never been brought to our attention.   The
plan devised and prescribed in the charter of Kansas City,
the outlines of which are set forth in the statement of this
case above given, as carefully guards the constitutional
rights of the individual and of the public, arising as well
under the State as the Federal Constitution, as it seems
possible to do, unless we should say that a jury must be
impaneled and a separate trial had to assess the damages or
benefits to each of the several thousand city lots involved, the
absolute impracticability of which is manifest.   The result
of a proceeding like this is necessarily short of perfection,
and the justice that is hoped to be obtained through it must
in its nature be only approximate, but we seem to reach that
end as closely under the course prescribed in the charter of
Kansas City, as can reasonably be expected.   We do not
understand the fourteenth amendment as designed to block
the way to all public improvements of this kind by requiring
a degree of certainty in the assessments, impracticable un-
der a reasonable procedure.

III.   Appellants complain that the jury omitted from
the assessment of benefits a great deal of property belonging
to railroad companies, churches, schools, hospitals, etc., situ-
ated in the benefit district designated by the ordinance.
The law on this subject has been expressed by this court per
BLACK, J., thus:   "If the jurors must determine the benefits,

then it is for them to say whether a particular lot is benefited at all or not. The council must determine the boundaries of the benefit district, but the error of the argument made for the appellants is in assuming that all property in the district must be assessed. Whether it must all be assessed depends upon the fact whether it is all benefited, and that is a question for the jury." [Kansas City v. Baird, 98 Mo. loc. cit. 221.] And that is in harmony with the quotation above from the opinion in Norwood v. Baker.

In connection with this point is argued, what is claimed to be hardship and manifest inequality of the assessment. Again we must say that that is the jury's business, and the law presumes that they are better judges of that subject than the court, the appellate court, at least. We are given as a conclusive illustration, the assessment of $2 per front foot on a lot very near the park, and $50 a front foot on appellant's property a mile or more away. That inequality is not so self-evident that it may be so declared as a matter of law. Two dollars a front foot on a lot in an unimproved and sparsely settled district remote from the center of trade might be in fact a greater rate *ad valorem* than fifty dollars a front foot, on a business lot in the heart of the traffic.

IV. Appellant complains of the following instructions:

"15. The jury is instructed that the owner of the land taken is entitled to the market value thereof, and by market value is meant the price the owner of the land could obtain for it after taking reasonable time to effect a sale; and you are further instructed that the owner is entitled not simply to such sum as the property would bring at a forced sale or under peculiar circumstances, but such sum as the property is worth in the market, that is, to persons generally if those desiring to purchase were found who were willing and able to pay its just and full value on ordinary terms of a private sale.

"16.   The court instructs the jury that in assessing the damages that should be allowed to the remainder of the land of J. C. Egelhoff, from which the land in plat tract number 392 is taken by these proceedings, they should assess such a sum as will compensate for the damages to said remainder not taken, less the benefits, if any, peculiar to said tract of land by reason of the establishment of the proposed park; and by such peculiar benefits is meant such benefits as that land derives from the establishment of said park, which are not common to the other land in the same neighborhood on account of the establishment of said proposed park.

"18.   The court instructs the jury that in estimating the value of property to be taken on streets that have not been graded in front of same, you will consider said property in its present condition and relations to other property and streets surrounding it and use your own judgments as to how it can be best utilized, disregarding, if you think best, any established or proposed grade by the city.

"19.   In passing upon the value of lots 12, 13, 34 and 35 of block 7, Mount Auburn Addition, embraced in these proceedings and known as parcels 8883, 8884, 8885, 8886, and containing the spring of water known as Willow Spring, the jury are authorized, in connection with all the other evidence in the case, to take into consideration the special value of said spring, if any, together with all the lawful uses, such as sale of water or piping to supply families, to which the owner may put such spring and water as a source of profit."

The criticism of No. 15 is that it is uncertain, being based on what could be obtained if purchasers were found who were willing, etc., but gives no criterion in case such purchasers could not be found.   There is no force in that contention.   Of number 16 it is said that it is in conflict with the clause in instruction numbered 1, relating to the assessment of benefits where the jury are told not to consider bene-

fits that the particular lot will receive, "in common with other property in the city," whereas in number 16 they are told to disregard such as are "not common to other lands in the same neighborhood." Instruction number 1 relates to benefits assessed on property not taken to pay the damages for property taken or damaged. Number 16 relates to the assess. ment of damages to property left where some of it has been taken. The instructions are not in conflict and both are correct. Besides, it does not appear from the record that any damages were allowed Egelhoff on that account.

The objection made to number 18 is that it authorizes the jury to disregard proposed streets in estimating the present value of the property to be taken. A street proposed, but not made, might affect the value of the land, either to enhance or depreciate it, or it might have no influence, and that would depend on the circumstances. If there were any facts or circumstances in evidence in this instance that could have possibly rendered this instruction harmful to the appellants they have not pointed it out.

The complaint of number 19 is that it authorizes the jury to indulge in speculation as to profits that might be made by the sale of water. That is a misconception of the instruction. It only authorizes the jury to take into account the spring, for the uses it may have, in estimating the value of the land.

These are the only instructions complained of, and we do not think they are subject to serious objection.

In the foregoing pages we have given our views on all the questions presented by the counsel for appellants except such as have been already answered by this court in Kansas City v. Baird, 98 Mo. 215; Kansas City v. Smart, 128 Mo. 272, and Kansas City v. Bacon, 147 Mo. 259, and as we are satisfied with what is decided in those cases, a further discussion of the subject is unnecessary.

We find no error in the record and the judgment of the circuit court is affirmed. *Gantt, C. J., Brace, Robinson* and *Marshall, JJ.,* concur; *Sherwood* and *Burgess, JJ.,* dissent.