HARRY LYON *vs.* RHODE ISLAND COMPANY.

JULY 9, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1) *Evidence of Deceased Witness.*

The testimony of a witness since deceased, at a previous trial, where the daughter of plaintiff brought suit in her name by plaintiff as her next friend, to recover for injuries arising out of the same accident, may be received at a subsequent trial of an action brought by plaintiff in his own right to recover for injuries, for while the plaintiffs were not the same, the father owing to his obligation to support the minor was interested in the compensation

she would recover and had the full management of her suit, and employed the same counsel in both actions, and owing to the issue of negligence being the same in both cases, was also interested to have the first action carefully tried, and the witness having been fully cross-examined, under all of these circumstances the record discloses a substantial identity of interest.

(2)    *Evidence. Reading from Former Testimony.*

It was not error to refuse permission to read from the testimony of a witness at a former trial, where such witness at the subsequent trial admitted substantially all that was asked him in reference to discrepancies between his former testimony and that at the trial of the case at bar.

TRESPASS ON THE CASE for negligence.    Heard on exceptions of defendant and sustained.

PARKHURST, J.    This is an action of trespass on the case brought by Harry Lyon against the Rhode Island Company to recover damages for injuries received by him on the 24th day of July, 1911, through a car of the defendant running into his buggy, thereby throwing him out onto the ground.    The case was tried before a justice of the Superior Court and a jury in December, 1914, and resulted in a verdict for the plaintiff for $3,000.    The defendant filed a motion for a new trial for the usual reasons, which motion was denied by the trial justice.    Thereupon, it took the required procedure to bring its exceptions before this court.

On the date above mentioned, the plaintiff drove in the course of his business with his horse and buggy to a point near the entrance of the Rhode Island Hospital Trust Company building, on Westminster Street.    There he hitched and left his horse and buggy, standing next to the curbstone; with his daughter sitting in the buggy, on the right side of Westminster Street, facing up the street, and went into the Waldorf Lunch to get his breakfast.    About 9 o'clock he came out, walked over to where his horse was standing, unhitched it, looked to see if a car was coming, and says that he saw none; he said there was none then in sight; got into his buggy, started to turn around to go toward South Main Street, and, as he started to turn, he says he looked again to see if a car was approaching and he saw a car standing at

Reiner's drug store. He proceeded to turn around and had proceeded partly across the track when this car came along and collided with his buggy, throwing the plaintiff out and injuring him.

Much testimony was taken by both parties, and numerous exceptions were taken by the defendant; but it will only be necessary at the present time to consider in detail a few of the exceptions, in view of the disposition which we shall make of the case in its present aspect.

(1) Defendant's exceptions 3 and 5 were taken to rulings excluding the testimony of George Harrop, given at a former trial; Harrop was the motorman of the car which came in collision with the buggy and had died prior to the trial of the case at bar; his testimony had been taken and transcribed in the case of Ella Lyon, the minor daughter of this plaintiff, which had been previously tried. It appears that this suit of *Ella Lyon* v. *The Rhode Island Company* was brought in her name by her father, this plaintiff, as her next friend, for recovery for injuries alleged to have been received by her in the same accident, she being the same child spoken of above who was in the buggy with her father at the time of the collision. It further appears that said George Harrop had died after the trial of the Ella Lyon case and prior to the trial of this case; and the defendant offered to prove and read in evidence a transcript of his testimony taken at the former trial; this was objected to by the plaintiff's counsel on various grounds, but his main legal objection was that the former suit was not between the same parties, since the plaintiffs were not the same,—Ella Lyon suing for injuries caused to her, and her father, the plaintiff in this suit, suing for injuries caused to him; and on this ground it was excluded by the trial justice, who ruled with great reluctance that it was not admissible.

After a careful consideration of the authorities cited on behalf of both parties, we are of the opinion that this ruling was erroneous. While it is obvious that the plaintiffs in the two cases are not the same, it is to be noted that the

case of Ella Lyon, who was eight years old at the time of the accident, was brought by her father, this plaintiff, in her name, as her next friend.  He was her father, obliged to maintain her and care for her, and it was as much to his interest as to hers that she should recover compensation for her injuries, which would be of material assistance to him in so maintaining and caring for her.  He had the full management and control of her suit, subject only to the order and control of the court itself in the interest of the minor child; he employed counsel to act in the case for her, and actually employed the same counsel to bring this suit for himself.  This same counsel who appeared for him in the bringing of this suit, appeared for his daughter in her case, and it was manifestly for his interest as well as for hers that her case, which was tried first, should be carefully tried as it might fully develop the facts regarding the alleged negligence of the defendant which would, on that issue, be the same in both cases.  It is a fact disclosed by the record that the witness Harrop was fully cross-examined by counsel for this plaintiff, to the extent of upwards of two hundred questions, following upon a direct examination of only thirty-eight questions.  Under all these circumstances we are of the opinion that the record discloses such evidence of the substantial identity of interest as between this plaintiff in his suit and the said Ella Lyon as represented by him as her next friend and father in her suit, that it would be the merest technicality to say that the testimony offered was inadmissible, by reason of lack of identity of parties or their interests in the two suits.  That justice be done to the parties is the first consideration of the court; and while it is conceded that the general rule regarding the admission of the sworn testimony of a deceased witness taken at a former trial requires that the parties to the suit in which the testimony was given be the same as the parties in the suit in which it is offered or that they be privies in interest at least; yet we find a number of cases in which, in the interests of justice, the strictness of the rule regarding identity of the parties has been relaxed, where the right of cross-

examination was had and exercised by the opponent, so that it appears that the witness was subjected to such examination as to deprive his testimony of any *ex parte* character.

The basis of the rule relating to the admission or exclusion of former testimony of a deceased witness is well stated in 2 Wigmore on Evidence, § 1388, viz.: "Parties or Privies the Same. It is commonly said that the parties to the litigation in which the testimony was first given must have been the same as in the litigation in which it is now offered. But this limitation suffers in practice many modifications; and properly so, for it is not a strict and necessary deduction from the principle. At first sight, indeed, it seems fair enough to argue even that a person against whom former testimony is now offered should have to be satisfied with such cross-examination as any other person whatever, in another suit, may have chosen to employ. It is entirely settled that in some such cases he must be satisfied, namely, in cases where the other person was a privy in interest with the present party. The reason for such cases is that there the interest to sift the testimony thoroughly was the same for the other person as for the present person. The principle, then, is that where the interest of the person was calculated to induce equally as thorough a testing by cross-examination, then the present opponent has had adequate protection for the same end. Thus, the requirement of identity of parties is after all only an incident or corollary of the requirement as to identity of issue. It ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent has; and the determination of this ought to be left entirely to the trial judge.

"Nevertheless the courts have not, in name at least, often gone so far as to accept so broad a principle."

The author then proceeds to state in detail the main restrictions under which the courts act in admitting such evi-

dence; but throughout the discussion it is evident that the test of admissibility is whether the opposing party has had and exercised the right of cross examination; *e. g.*, he says, in relation to the introduction of such testimony where the party opponent in the present suit is a privy in interest with the party in the former suit, "That question is merely whether a thorough and adequate cross-examination has been had."

The right of cross-examination has frequently been held to be the true test of admissibility. Thus in the case of *In re Harold R. Durant*, 80 Conn. 140. In this case a woman who was opposed to a divorce, but insisted that her husband should furnish her adequate support, applied to the respondent, an attorney at law, for that purpose, who induced her to permit him to engage a detective to secure evidence of her husband's infidelity, upon his representation that the procurement of such evidence would lead to an advantageous settlement of her suit for support. The detective, however, obtained no evidence and the attorney then suggested to him a Mrs. D. that the latter should solicit and entice the husband to commit adultery with her under such circumstances as would make the detective a witness of the act; but this scheme proved futile. Thereupon the detective and Mrs. D. were persuaded by the respondent to represent to his client that her husband had been criminally intimate with Mrs. D., and the client believed the representations so made. Subsequently the detective, in a deposition taken by the husband in the suit against him for support, and Mrs. D. upon the trial of the action, testified to these occurrences, and the latter was cross-examined in the interest of the respondent, who was present during a portion at least of the time she was testifying. Upon disbarment proceedings based upon the foregoing misconduct of the respondent, it was held: (p. 151) "The offer of the transcript of the testimony of the deceased Mrs. Delkescamp brought the court into touch with the so-called hearsay evidence rule, as that of Murphy's deposition did not. The logically probative value of the

matters therein is beyond question. If its reception in the proceedings against the respondent was improper, it must, therefore, have been by reason of some rule of the kind which Wigmore has denominated 'superadded and abnormal ones,' which made the admissibility of declarations of third persons elsewhere made, although under oath, depend upon their satisfying certain tests, in addition to that of relevancy, which tests are conceived to be all-important, in order that the possible weaknesses of such declarations may be revealed and their real value indicated to the trier as fully as may be. Such a rule is the hearsay one, and the tests which have had the approval of experience, as applicable to the evidence of a deceased witness in another trial, are confrontation and the opportunity for cross-examination open to the party against whom it is offered; and cross-examination implies confrontation. Wigm. on Evidence, §§ 10, 1360, 1362, 1365; *Chapman* v. *Chapman*, 2 Conn. 347, 348. In the present case the court has found that the respondent had full opportunity in the former examination of Mrs. Delkescamp to cross-examine her in his interest, and availed himself of it. But it is said that the issues were not then the same as the present, and the parties not the same. The issues were substantially the same, and nothing more is necessary in that regard. The topics which were the subjects of examination, in so far as the witness' testimony was concerned, were the same as those under examination in the present proceedings, and her evidence had the same bearing upon an important relation to the issues in the two cases. Wigm. on Evidence, § 1387; 1 Greenl. on Evidence (16th Ed.), § 163a. The requirement of an identity of parties is only a means to an end. This end was attained when the defendant availed himself of the unrestricted opportunity to cross-examine Mrs. Delkescamp. He was then fully aware of the importance to him in his professional capacity of her damaging disclosures. He had been forewarned of what might be expected from her, that her assertions might furnish the basis for disbarment proceedings against him, and had an ample

opportunity to prepare to put her statements to the test of such an examination as he might think desirable. Under such conditions, to.now say that the tests which the law prescribes for his protection against the witness' then assertions, were not, for the purposes of such a disciplinary proceeding as that before us, fully satisfied, would be to dispense with common sense in the application of the rule invoked, and to lose sight of its spirit and purpose in a blind adherence to the letter of some attempted expression of it. Wigm. on Evidence, § 1377.

"The respondent, however, insists that the finding ought to be corrected, so that it should disclose that Mr. O'Neill did not represent him, that the cross-examination made by that attorney was in no way in his behalf, and that no opportunity was in fact given him to cross-examine the witness. Were the correctness of this contention conceded and the desired corrections made, it would then appear that the respondent—present when the damaging disclosures were made, having advised with counsel as to his proper course of conduct in respect thereto, having obtained from the committee a statement of his willingness that he, the respondent, be heard, and fully aware of the gravity of the situation—took no steps to challenge the truth of the disclosure by asking the privilege of examination, and let them pass in silence and unnoticed. Such conduct, in the presence of the witness' assertions, made it competent for the court to know the whole situation, and to draw therefrom such inferences of guilt of the charges made by the witness as it reasonably might. Wigm. on Evidence, § 173."

In the case of *Minea* v. *St. Louis Cooperage Co.*, 162 S. W. 741, the action was by the father of a minor son for expenses incurred by him in having said son treated at a hospital, for medical and surgical expenses, loss of the services of the son, etc. From a judgment in favor of plaintiff, defendant appealed, claimed that the matter of expenses incurred by the plaintiff, and his right to recover for them, had been adjudicated in another case.

This other case referred to was as follows:   That of Anton S. Minea, a minor, by George Minea, his next friend, against the same defendant.   (See 157 S. W. 1006.)   "This is the same accident that was then before our court, the son there suing by his father as next friend.   The averments of the petition are substantially as in the statement here filed and save as to the measure of damages there claimed as sustained by the son himself, here by the father for his expenditures and loss of service of the son, they are practically alike."

(p. 744.)   "(7)   We are not holding that the testimony of the general officer, the president, given in the other case, if it is properly proved that he is such, is not admissible, because heresay testimony.   The rule which excludes hearsay testimony rests mainly on the ground that there had been no opportunity to cross-examine the declarant."

"(8)   The admission sought to be here used is alleged to have been made when the declarant was being examined as a witness in court in the trial of the case of Anton Sylvester Minea against this defendant.   While in that case the son sued through his father as next friend for injuries sustained by the son, here the father sues, not in a representative capacity, as there, but in his own right, for loss sustained by him as father in consequence of the injury to his son. The question of liability of the defendant in either case, turned on the same law and facts, the only difference being the measure of damage.   We think that under this condition the testimony given in the one may be given in evidence in the other.   The parties are substantially the same.   .   .   . Save as to the measure of damages, the issue is practically the same, namely, was this defendant liable for the injuries sustained by the son of the plaintiff here.   In this situation, we hold that the testimony in the first action can be used in evidence here, if properly proved."

In *Atlanta & Westpoint R. R. Co.,* v. *Venable,* 67 Ga. 697 (1881), the facts are stated as follows:   "In 1877 Mrs. Pyron was injured by the running away of a horse which she

was driving near a crossing of the Atlanta and Westpoint Railroad. She brought suit against the railroad, alleging that her horse was frightened by defendant's train, that it had no blow-post at the crossing, gave no warning of approach, etc., and in its prosecution interrogatories were made out for her, and executed. Subsequently she died from the injuries sustained, and Venable, as next friend of her minor son, Willie, brought suit for the homicide of his mother. . . . The jury found for the plaintiff $794.60. Defendant moved for a new trial on the following among other grounds:

"(1) Because the court erred in admitting the interrogatories of Mary Pyron, the mother, taken in her case against said defendant. . . .

"Jackson, C. J. 1. The mother had sued for personal injuries to herself by the railroad company, and on that case her interrogatories were taken. Subsequently she died, and her child, by next friend, sued for her homicide and recovered. Objection was made to the introduction of her testimony on the former trial, but it was admitted. The admissibility of the interrogatories turns on the question whether the action was substantially on the same issue and substantially between the same parties.

"Substantially, we think that the issue was the same. The injuries for which she had sued caused her death, and for that result of those injuries the child sued. In 45 Ga. 283, it was held that testimony taken in a criminal case before a committing court was admissible on a civil action brought for damages, on the ground that the cause of action being the injuries inflicted was in substance the same. It was ruled in the same case that the parties were substantially the same though in the one case the state prosecuted and in the other the injured person sued. The reasoning on which the decision was put is that the great right of cross-examination had been exercised, and the plaintiff was represented by the State, and in that view was a substantial party. The Code uses the term 'substantially' both as to the issue and as to the parties, and the meaning of the Code was interpreted in that case, and we are bound by it.

"The decision is right too; otherwise, if a narrow construction be put on the qualifying adverb 'substantially,' so as to require the identical parties, its force is entirely gone, and that word had as well have been omitted.   See Code, Section 3782; 45 Ga. 283; 1 Greenleaf, 164, 198, 236 *et seq.*   If the State represented substantially the plaintiff suing for injuries to his person, much more did the mother represent her child, both suing for injuries in the same transaction.   It is true that the child could not have sued had not her mother died; and in the mother's case the literal cause of action is the injury done her not resulting in death, and in the child's the literal cause of action is the homicide; but the substantial cause in both cases is the one cause of both actions, the wrong done by the railroad company, and that was the issue.   The interrogatories were introduced, too, only in respect to the injury and the manner in which it was done, and how it occurred, and this was the real thing in issue in both cases.   Was the company negligent or diligent?   Was the mother?   These were the main substantial questions at issue. "

*Kreuger* v. *Sylvester, Appellant,* 100 Ia. 647, 652.   Action at law to recover damages for an alleged assault and battery.   Trial to a jury.   Verdict and judgment for plaintiff, and defendant appeals.   Deemer, J. (p. 652) "VI.   Appellee introduced on the trial the evidence of one George Meggitt, taken in a criminal proceeding had previous to the trial of this case, wherein appellant was tried under an indictment for assault with intent to commit a great bodily injury upon appellee.   Error is assigned upon the admission of this evidence.   As we do not have all the evidence adduced, we must presume that sufficient preliminary proof was offered to make this evidence competent if it was admissible under any state of facts.   It appears that the evidence was taken in short-hand on the trial of the criminal case, and the reporter who took it was present at this trial, and gave testimony as to what Meggitt said in the former proceedings. We think that if the proper foundation was laid, as we must assume it was, the evidence was admissible, for it appears

that the witness Meggitt was fully cross-examined by counsel at the trial of the criminal case, and, although the parties are not precisely the same, yet such evidence is almost universally admitted.    Greenleaf, Ev., Section 164; *Charlesworth* v. *Tinker*, 18 Wis. 663, and cases cited; Bradner, Ev., page 313; Code, Section 3777.    The admissibility of such evidence seems to turn on the right to cross-examine, rather than on the precise identity of the parties."

*Charlesworth* v. *Tinker et al.*, 18 Wis. 663 (1864).    "Appeal from Circuit Court of Dane County.    The action below was brought by Martin Tinker and his wife, Janette, against Henry Charlesworth, for an assault and battery upon Janette. On the trial, Jonathan Carter, as a witness for the defendant, testified that he was present at the trial of the suit of the State of Wisconsin, upon the complaint of Janette Tinker, against Henry Charlesworth, for an assault and battery upon said Janette, committed at the house of said Charlesworth, September 10, 1862 (being the same assault complained of in this action), which trial was held before M. C. Bennett, a justice of the peace in Dane County, October 3, 1862; that his wife was also present and a witness at said trial on behalf of the defendant; and that she was now dead.    .   .   .    The defendant's counsel then asked the witness what Mrs. Carter testified to at said trial; but the testimony was ruled out. Verdict and judgment for plaintiffs; to reverse which judgment the defendant sued out his writ of error."    .   .   .

"By the Court, Cole, J.    The only question in this case is the one arising upon the ruling of the circuit court excluding the evidence offered for the purpose of showing what the deceased witness, Mrs. Carter, testified to on the trial of the suit of the State upon the complaint of Janette Tinker against the plaintiff in error, before the justice.    That was a prosecution on behalf of the State for an assault and battery upon Mrs. Tinker, which assault constitutes the cause of action in this case.    It is claimed that this evidence was properly excluded, because the testimony of the deceased witness was not given in a judicial proceeding in which the

plaintiffs in this case were parties, and where they had the power to cross examine the witness. It seems, however, to be well settled by many of the authorities, that it is not necessary, in order to admit such testimony, that it should have been given on the trial of a cause in the exact technical shape of the second action, or that the parties in this action should be literally or nominally the same with those on the trial of the first action. See the cases cited in Cowen & Hill's notes to Phil. Ev., 1 Vol., p. 389 *et seq.* (4th Am. ed.); 1 Greenl., Ev., Sections 163 and 164. It appears to us that the true test in regard to the admissibility of such evidence is, did the party who is to be affected by it have the power of cross-examining the witness, or at least have an opportunity of doing so? If the party had this power of cross-examining the witness on the former trial, and was legally called upon to do so, we can then see no danger or hardship in admitting the evidence in a subsequent suit after the decease of the witness. The testimony of Mrs. Carter in the prosecution before the justice, related to the same assault in issue in this case, and if Mrs. Tinker and her husband had the management and control of that prosecution, could examine the witness, etc., we think then that testimony would be admissible under the rule above stated. And that our statute does give the complainant in a criminal prosecution before a magistrate for an assault and breach of the peace the control of the prosecution, with full power to examine all witnesses sworn upon the trial, there can be no doubt. . . . These provisions of our statute fully show that Mrs. Tinker and her husband had the right to control the criminal prosecution before Justice Bennett, might employ counsel to conduct the same, and had the power and ample opportunity of cross-examining Mrs. Carter on the trial of that cause. If so, the testimony of the deceased witness comes strictly within the rule above laid down. It likewise appears from the record, that the counsel for the plaintiffs in this case was also present and acted as attorney for the prosecution before the justice, and in fact did cross-examine Mrs. Carter.

Under these circumstances, it seems to us that evidence as to what she testified to on that trial was admissible."

The strong current of authority in the cases above cited seems to this court to fully sustain the admissibility of the evidence now under discussion, under the circumstances hereinbefore stated. Nor do we find in the authorities cited on behalf of the plaintiff anything of sufficient weight seriously to affect our conclusion. It is contended that a "next friend" is not a party to the suit but a mere agent theoretically appointed by the court or at least recognized by the court and permitted to prosecute the infant's cause, subject always to the control of the court and to removal in case the court so orders, in effect similar to a guardian *ad litem. Brown* v. *Hull,* 16 Vt. 673; *Leavitt* v. *City of Bangor,* 41 Me. 458. But in the *Leavitt* case, p. 461, it is said: "We do not mean to say that *prochein ami* may not be regarded as a party for certain purposes, such as receiving notices to take depositions and the like, but only that he is not a party in such a sense, as under our statutes, at the time of trial, would make him responsible for costs." *Tate* v. *Mott,* 96 N. C. 19, 22; *Raming* v. *Met. St. Ry. Co.,* 157 Mo. 471, 491; *Anon.,* 2 Hill, N. Y. 417; *O'Shea* v. *Wilkinson,* 95 Cal. 454; *Emeric* v. *Alvarado,* 64 Cal. 529; *Justice* v. *Ott,* 87 Cal. 530. But none of these cases bear upon the question here involved.

In the case of *Hooper* v. *Southern Railway Co.,* 112 Ga. 96, where the court held that a suit against a railroad company for personal injuries to a minor brought in his behalf by his father as next friend is not either as to cause of action or as to parties actually or substantially the same as a suit by the father in his own right for loss of the minor's services occasioned by the same injuries, it is to be noted that the statute of Georgia under which the case was tried, under the facts in the case, was held to have such a bearing upon the question of the negligence of the father who was present at the time of the accident, that the issue as to the negligence of the son who was driving the team at the time

of the accident, and as to the negligence of the father, in the present case, were substantially different. The particular testimony in the former case, which was ruled out and made the basis of an exception, was that of a physician, who had died, who was not a witness to the accident, but merely attended the son and testified as to the extent of his injuries, and so was irrelevant as to the question of negligence.

In *Oliver et ux. v. Louisville, &c. R. Co.*, 32 S. W. 759, it appears that the witnesses whose depositions in a former trial were offered in evidence were not dead, and might have been summoned.

In *Walterhouse* v. *Walterhouse*, 130 Mich. 89, bills in equity were tried, and former testimony of a witness given in another suit was admitted over objection. It appears that there were several other parties whose interests were not involved in the former suit, and that the issues were entirely different, nor did it appear that the witness was dead; it further appeared that his testimony was immaterial and that there was further testimony which sufficed for the decision of the case.

In *Met. St. Ry. Co.* v. *Gumby*, 99 Fed. 192, it appeared that the former suit was brought for injuries to a minor to recover for pain and suffering, etc., by his grandmother as guardian *ad litem*, and that the latter suit was brought by the mother of the minor for loss of services of her son. Evidence given at the former trial, witness having died, was offered at the latter trial and admitted against objection. The court says, p. 193: "It would appear from the record that the attention of the trial judge was not at the time called to the circumstance that the guardian *ad litem* who prosecuted the former action was not the infant's mother, but his grandmother." Such distinction indicated by this comment of the court sufficiently distinguishes this case from the case at bar.

In *Succession of Derigny*, 55 So. 552; 128 La. 853, it appears that certain depositions theretofore taken were offered in

evidence; it appears that they were not taken according to law so as to bind the parties against whom they were offered; nor does it appear that the deposing witnesses were dead at the time of trial; the case is of no weight here.

A few other cases cited by plaintiff have no special bearing upon this question and need not be reviewed.

The court is of the opinion that the testimony of George Harrop taken at the trial of the case of *Ella Lyon* v. *The Rhode Island Co.*, was admissible and that its exclusion was reversible error, and the defendant's exceptions 3 and 5 are sustained.

(2)    Exceptions 4 and 6 to refusal of permission to read from the testimony of Max Pepper taken at the former trial must be overruled. It appears from the examination of Max Pepper that he admitted substantially all that was asked him in reference to discrepancies between his former testimony and his testimony at the trial of the case at bar, and the reading of his former testimony therefore became unnecessary.

Exceptions 7–9, inclusive, relating to the admission of certain questions in rebuttal are unimportant and need not be discussed.

Certain exceptions (18–22) to instructions given to the jury, at plaintiff's request, specially relating to the application of the doctrine of the last clear chance, and the right of way of plaintiff, are urged upon the ground that they were inappropriate in view of the exclusion of the testimony of George Harrop who was the main witness for the defendant upon the matter of the application of these doctrines; we think these instructions, under the circumstances, were erroneous in view of this exclusion of important testimony bearing upon these questions, and exceptions 18–22, inclusive, are therefore sustained.

Exceptions 23–25 based upon the trial judge's denial of the motion for new trial, need not now be discussed in view of the fact that all admissible evidence was not before the court and jury at the trial.

Exceptions numbered 3, 5 and 18 to 22, inclusive, are sustained; the other exceptions are overruled; and the case is remitted to the Superior Court for a new trial.

*John F. Collins, Waterman & Greenlaw,* for plaintiff.

*Clifford Whipple, Alonzo R. Williams, Albert N. Peterson,* for defendant.