STATE OF MISSOURI at the relation of THE CITY OF ST. LOUIS, a Municipal Corporation, Relator, v. EUGENE J. SARTORIUS and M. HARTMANN, Judges of the Circuit Court of the City of St. Louis. —102 S. W. (2d) 890.

Court en Banc, March 24, 1937.

*E. H. Wayman, John T. Hicks* and *Francis J. Sullivan* for relator.

834

*Ford W. Thompson* for respondents.

TIPTON, J.—This is an orginal proceeding in mandamus to compel the respondents, judges of the Circuit Court of the City of St. Louis, to reinstate the relator's motion for a new trial in the case of The City of St. Louis v. Central Institute for the Deaf et al., No. 207079-B, pending in Division 18 of that court and to rule on the same by either sustaining or overruling it.

In that case the City of St. Louis sought to condemn for public use, under Chapter XXI of the Charter of that city, parcels of land, including a lot owned by the defendants, Russell Egan, Elizabeth Egan and Patrick Egan. On July 22, 1935, the permanent condemnation commission filed a partial report in the circuit court ascertaining and reporting the damages sustained by the Egans to be $11,290. Two days later the Egans filed their exceptions to the report and award. On July 29, 1935, the relator deposited in the registry of that court the amount of the award and immediately entered into possession of the property of the Egans, under the provisions of Section 6, of the Chapter XXI. On November 5, 1935, the court sustained the exceptions to the report and award, and in accordance with the provisions of the relator's charter and the matter of assessing and reporting the Egans' damage was referred by the court to the alternate commissioners provided for in relator's charter, who filed a report on December 10, 1935, assessing and awarding damages to the Egans in the sum of $15,000. Whereupon the relator filed its exceptions to the report and award of the alternate commissioners. On January 17, 1935, the court overruled relator's exceptions to the report and award of the alternate commissioners. The relator continued in possession of the Egan property without depositing an additional sum of money with the registry of the court to make its deposit in the sum of $15,000.

On February 1, 1936, the defendants, Egans, filed a motion in that court asking that the relator be required to deposit in court the sum of $15,000, for the use and benefit of the Egans, or failing to make the deposit to vacate their property and surrender possession to them. On May 11, 1936, the court sustained this motion and required the relator to pay $15,000, by May 21, 1936, or to vacate the property. On the same day that the court sustained that motion, it entered final judgment in the cause. Within four days after the entering of the final judgment in that cause, the relator filed its motion for a new trial.

The relator did not vacate the property or deposit the sum of $15,000 in accordance with the award of the alternate commissioners by May 21, 1936. So, on that date the defendants filed a motion to strike relator's motion for a new trial from the files. The court sustained defendants' motion and struck the relator's motion for a new trial from the files and ordered a special execution issued. Other pertinent facts will be stated in the course of this opinion.

Condemnation proceedings brought by the city of St. Louis are governed by Chapter XXI of that city. The pertinent sections of that chapter to the questions involved in this cause are as follows:

"Sec. 6. At any time after the commissioners file their report the city may pay into court the amount of damages assessed, less benefits, if any, and thereupon it shall be entitled to take possession of or damage the property, assuming the lien of all general taxes not then payable on property actually appropriated.

"Sec. 7. Within twenty days from the filing of the comissioners' report, exceptions in writing thereto may be filed by any party interested, and upon such exceptions the court shall review the report and may order, on cause shown, a new assessment by other commissioners, or make such other orders thereon as justice may require. The court shall hear and dispose of such exceptions with all reasonable speed and may itself assess benefits anew.

"Sec. 8. The court upon approving the commissioners report shall render final judgment thereon reciting the report and adjudging that the city have and hold the property petitioned for, describing the same, for the purposes specified, upon payment of the damages less the benefits assessed in each instance; that so much of the report as is a judgment for benefits against specific property be a lien on such property for ten years from entry of the judgment, and prior to all other liens thereon; and that the city recover the respective benefits in excess of damages assessed in each instance against private property with interest from date of judgment and have execution therefor. The clerk shall forthwith make and deliver a certified copy of such judgment to the comptroller, who shall record the same in a book kept and conveniently indexed for that purpose. The comptroller may, forthwith, and if no appeal be taken from such final judgment, he shall, at the expiration of the time for such appeal, forward a copy of the judgment to the board of aldermen; and within sixty days after the receipt of such copy, unless an appeal is pending, and, in no event later than sixty days after disposition of all appeals, the board of aldermen shall make an appropriation for the payment out of the city treasury of the damages assessed in favor of each party entitled less his benefits as determined by such final judgment, and the city treasurer, on warrant of the comptroller, shall cause payment to be made to the several parties entitled or into court for their use, as the case may require.

"Should the board of aldermen fail to make such an appropriation the judgment for damages shall be collected by the owners concerned as other judgments against the city are collected; and if any part of such assessment of benefits be not paid when due, special execution shall issue on request of the comptroller against the property charged with the lien, and proceedings thereunder shall conform, as near as may be, to the proceedings under special executions on ordinary judgments foreclosing liens on lands.

"Should any such final judgment be reversed on appeal and a new assessment be ordered, the city or any defendant shall have judgment for any excess due by reason of payment having been made by such party under a prior final judgment in the cause."

Under the above-quoted sections, does the relator have a right, upon payment of the first award of $11,290, to retain possession of the Egan property after a second award for a larger amount has been approved by the court, without first paying the amount of the second award, until the litigation between the relator and the defendants, the Egans, has been finally determined?

The relator contends it has such a right, while the respondents contend that if the relator wishes to retain possession of the property it must pay the second award and if the relator is successful in reducing the amount of the second award at the end of the litigation, it would be entitled to a judgment against the Egans for the amount of the excess.

To sustain its position, relator relies on the following cases: St. L. O. H. & C. Ry. v. Fowler, 113 Mo. 458, 20 S. W. 1069; Rothan v. St. Louis, Oak Hill & C. Ry. Co., 113 Mo. 132, 20 S. W. 892. These cases hold that the plaintiffs can, on paying to the landowner or into court for him the amount of the first commissioner award, take possession of the land and proceed to use the land appropriated, even if exceptions are filed by either party and allowed and any subsequent proceedings shall only affect the amount of compensation.

The respondents do not challenge the ruling of those cases, but contend that they are decided on the statutes that give corporations the right to condemn private property and these statutes are wholly unlike the provisions of the charter above quoted, and therefore those are not in point. Respondents refer us to Section 1344, Revised Statutes 1929, which is as follows:

"Upon the filing of such report of said commissioners the clerk of the court wherein the same is filed shall duly notify the party whose property is affected of the filing thereof; and the report of said commissioners may be reviewed by the court in which the proceedings are had, on written exceptions, filed by either party in the clerk's office, within ten days after the service of the notice aforesaid; and the court shall make such order therein as right and justice may require, and may order a new appraisement, upon good cause shown.

Such new appraisement shall, at the request of either party, be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages; *but notwithstanding such exceptions, such company may proceed to erect said telephone or telegraph line, or construct said road or railroad; and any subsequent proceedings shall only affect the amount of compensation to be allowed.* In all cases arising under the provisions of this article, the report of commissioners, when signed by a majority of them, shall be taken and considered as the report of all.'' (Italics ours.)

That part of the above-quoted statute that is in italics clearly provides that a condemnor, upon paying the amount of the first award to the landowner or into court for him, may enter into possession of the land, and appropriate it to his use, notwithstanding the award be later set aside, and that the condemnor may remain in possession of the land and the amount of damages may be later litigated 'and the final settlement can be made between the parties at the end of the litigation.

This is a very wise provision, as it permits public improvements to be made during the pendency of the litigation. If this were not so, public improvements could not be started until the litigation has ended, thus, in many instances, delaying such improvement for years.

We think that Section 1344, supra, and Sections 6, 7 and 8, supra, are very similar and the intent of both are the same. Section 6, provides that the relator may enter into possession of the land upon paying the first award. Section 7 allows exceptions to be filed to the award and it does not provide that in event the exceptions are sustained that the relator must surrender possession of the property. Construing these two sections together it is clear that the city of St. Louis may enter into possession and remain in possession even if the exceptions are sustained and the first award is later set aside.

In event a subsequent award is made in which the landowner is allowed damages in a greater sum than the first award, there is no provision in these two sections that the relator must pay the landowner or pay into court for his use an additional sum sufficient in amount to equal the last award. Nor is there any provision that upon the approval of the report and award by the court that there should be any additional payment made by the city of St. Louis. It is likewise true, in event the subsequent award is in a sum less than the first award that the landowner is not required to refund to the city of St. Louis the difference between the first award and the subsequent award.

The respondents contend that when a subsequent report and award of the commissioners is approved by the court, the relator and the landowner must then adjust the damages allowed in reference to the amount of the first award. For instance, in the case at bar, when the report and award of the alternate commissioners is approved the

relator must pay the amount of that award or vacate the property. For their authority they rely upon the first clause in Section 8, which is as follows:

"The Court upon approving the commissioners' report shall render final judgment thereon reciting the report and that the City have and hold the property petition for . . . upon payment of the damages."

All this clause does is to pass title of the property when a final judgment is entered and damages paid. It is often true that many months elapse between the time the award is made and a final judgment is entered. There is nothing in this clause requiring the relator to pay the amount of the award when it is approved by the court. Often the commissioners make partial reports which are approved by the court, and as there can be only one final judgment, the entry of it must be postponed until the court approves the award on every piece of property sought to be condemned.

Nor does this clause require the relator to pay the amount of damages to the landowner given by the judgment as it is entered. Nor is there any such provision in this section. But on the contrary we think this section clearly contemplates that the final adjustments between the city and the landowner shall be postponed until the litigation finally is terminated. The remainder of this paragraph of this section states how the landowner shall be paid his damages, and it clearly contemplates that the judgment shall not be paid if an appeal is pending as shown by the following clause.

"The comptroller may, forthwith, *and if no appeal be taken from such final judgment, he shall, at the expiration of the time for such appeal* forward a copy of the judgment to the board of aldermen; and within sixty days after the receipt of such copy, unless an appeal is pending, and, the board of aldermen shall make an appropriation for payment out of the city treasury of the damages assessed. . . ."

This clause clearly shows that the damages are not to be paid as long as an appeal is pending and, also, shows that final settlement shall not be made between the parties until the litigation is terminated when the city has taken possession of the property by paying the first award.

We have construed these sections in the case of Thompson v. City of St. Louis 253 S. W. 969, l. c. 972, wherein we said:

"The final judgment has not been rendered in the condemnation suit is of no consequence. Under the provisions of the old charter (Art. 6, Sec. 11), as well as those of the new charter (Art. 21, Sec. 6), the city, upon the payment into court for the benefit of the landowners of the damages assessed in their favor by the commissioners, was authorized to take possession of the land condemned and proceed with the improvement of the highway for which they were taken. And such is the rule applicable in condemnation proceedings generally

in this State. [Secs. 1793 and 1795, R. S. 1919.] It should be added that the pendency of the condemnation suit does not affect the validity of the taxbills in suit here for the additional reason that the paving for which the tax was assessed lies wholly within the boundaries of the original 100-foot street which is in no way involved in that proceeding."

Also, in construing these sections, in the case of City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S. W. (2d) 661, 1. c. 663, we said:

"In view of the constitutional provision, the city could not take possession of respondent's property and open the street until it did pay the compensation ascertained by the commissioners. It is the general rule in condemnation proceedings that payment into court of the amount of damages fixed by commissioners or the acceptance of the same by the property owner does not terminate the litigation, and either the condemnor or the landowner may proceed to trial and attempt to obtain a verdict for a different amount."

We hold, that the court had no authority to sustain the motion requiring the relator to vacate the property or pay the amount of the award of the alternate commissioner, after the city had entered into possession of the property after paying into court the amount of the award of the permanent condemnation commission, and that part of the judgment that incorporates the motion as sustained is void.

Assuming, without deciding, the trial court had a right to strike relator's motion for a new trial for failure to comply with some previous order of the court, it follows, from what we have said, that the action of the trial court in striking the relator's motion for a new trial was done without authority being given by Chapter XXI, of relator's charter.

On May 2, 1936, this court denied an application for a writ of prohibition to restrain the respondents from entertaining the motion filed by the defendants, Egans, to require the relator either to vacate the property or to pay into court the $15,000 award of the alternative commissioners. A similar application for a writ of prohibition was denied by the St. Louis Court of Appeals on May 8, 1936. Respondents plead the denials of the application as an adjudication of the issue involved in this proceeding. These applications for prohibition were denied without an opinion being written. A sufficient answer to respondents' contention is that the granting or refusal of original writ of prohibition is discretionary with an appellate court. [State ex rel. Ross v. Sevier, 69 S. W. (2d) 662, 334 Mo. 977.] Respondents cite us to no authority to support their contention. In the exercise of our discretionary powers, we may have denied the application without ever passing on the merits of the issues involved. We rule this contention against the respondents.

■ As above stated, proceedings in condemnation by the relator are governed by its charter, but the charter is silent as to the procedure on an appeal after the trial court enters a final judgment. Procedure on appeal is governed by the statute, the same as any other appeal from a final judgment of the trial court. The motion for a new trial filed by the relator was filed pursuant to Section 1005, Revised Statutes 1929. It is admitted it was filed within the time prescribed by that section.

We think the relators are entitled to have its motion for a new trial re-instated and to have the trial court rule on the same by either sustaining or overruling that motion.

For the reasons above stated our alternative writ of mandamus is made peremptory.

All concur.