In the Matter of Proceedings for the Condemnation of Private Property for an ARMORY SITE IN KANSAS CITY, Missouri.

KANSAS CITY, Missouri, Respondent,

v.

Ed ARONSON, Appellant.

No. 44476.

Supreme Court of Missouri.

Division No. 2.

Sept. 12, 1955.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 10, 1955.

466

Solbert M. Wasserstrom, Robert L. Jackson, Kansas City, for appellant.

David M. Proctor, City Counselor, Benj. M. Powers, Associate City Counselor, Kansas City, for respondent.

STOCKARD, Commissioner.

This appeal arises out of proceedings in the circuit court of Jackson County brought by the City of Kansas City, Missouri, (sometimes hereinafter referred to as "the City") under its Ordinance 17161 providing for the condemnation of certain real estate "for public use for an armory site." The landowner's challenge to the authority of the City to condemn his land was overruled, and after a hearing, compensation for the taking in the amount of $42,000 was ascertained and assessed by a jury of six disinterested freeholders. From the judgment confirming the verdict of the jury and vesting title to the land in the City, the landowner has appealed.

The record affirmatively shows that appellant contends that if the City is authorized to condemn his land, the compensation assessed is inadequate in an amount not less than $36,000. Jurisdiction is in this court.

The pleadings in this case on the part of the City consist of a copy of Ordinance 17161, which, among other things, proclaimed that the property of appellant was necessary for public use as an armory site, that it be condemned for that purpose, and that compensation for the taking be paid in cash out of funds available or to be made available for said purpose from the Kansas City Armory Bond Fund.

Section 71.310 (all section references are to RSMo 1949, V.A.M.S.) provides that all cities have the power and authority to build or acquire, by purchase, lease, gift or otherwise, suitable armories, drill halls and headquarters, and the land necessary therefor, for such organizations of the National Guard of Missouri as may be stationed or located therein. The record in this case establishes that the City intends to use the condemned land as a site for an armory to be used by four organizations of the National Guard of Missouri "permanently" stationed or located in Kansas City.

The right of eminent domain is not inherent in municipalities and cannot be exercised by them without authority from the state. 11 McQuillin, Municipal Corporations, § 32.12; 18 Am.Jur., Eminent Domain, § 27; 1 Nichols, Eminent Domain, (3rd ed.) § 3.221. The authority of Kansas City to exercise the right of eminent domain exists by virtue of Article I, Section 1 of its Charter. City of Kansas City v. Bacon, 147 Mo. 259, 48 S.W. 860. The authority there delegated by the state is that, subject to the Constitutions and the laws of the United States and the State of Missouri, Kansas City may exercise the right of eminent domain for "any public or municipal use or purpose." The power and authority granted to Kansas City by Section 71.310, and the general delegation in its Charter of the right of eminent domain for any public or municipal use or purpose, authorize Kansas City to condemn land for the purpose of providing an armory for the organizations of the National Guard of Missouri stationed or located in Kansas City.

Appellant does not contend that the condemnation of land for the above referred to purpose would not be for a "public use." Neither does he contend that the City has not been delegated the authority to condemn land for that purpose. He contests the right of the City to condemn his land because he contends that even though the City intends to use the land to construct thereon an armory for the National Guard as authorized by Section 71.310, it also intends to permit the United States to use an unspecified portion of the land, and some of the facilities to be constructed thereon, for the purpose of carrying on training programs for the reserve units of its armed forces which are stationed in Kansas City. No agreement or understanding between the City and the United States to accomplish this is alleged or proved. Appellant bases his contention that this purported use will likely be made by reason of certain suggestions or recommendations to that effect made by subordinate officers of the City in a report made by the Armory Site Committee and by reason of certain comments made by an individual member of the City Council. But there is no evidence that the City Council accepted, or for that matter that it rejected, these suggestions or recommendations. Based upon this claim of pos-

sible future use, appellant contends in his first two assignments of error that the State of Missouri does not have power to condemn land for the support of the United States armed forces, and that if it does have such authority, it has not delegated that authority to Kansas City.

The City's position is that it has taken the appropriate steps to acquire the land by condemnation for a site for an armory to accommodate the presently existing four organizations of the National Guard of Missouri stationed or located in Kansas City. The City, with considerable candor on its part, also takes the position that, after it has acquired the site, if the City Council at some future date deems it to be to the advantage of the community and to the morale and training of the National Guard organizations concerned, it may enter into cooperative agreements with the United States pursuant to Article VI, Section 16, Constitution of Missouri, and Section 70.-220, for the development or operation of the facility. The City contends that any question concerning the validity or propriety of such cooperative agreements would have to be determined only if the City attempted to enter into them, but it briefed the question of its right to condemn if such agreements had already been entered into. We need not now decide if such agreements are authorized, and we could not, because the agreements are not before us, and in fact they are not in existence. But we may assume for the purpose of this proceeding that if the City does not have the authority to enter into such cooperative agreements with the United States for the development or operation of the armory facility, it will not do so.

Ordinance 17161 does not show on its face any alleged improper use by the City of the land condemned, and a legal presumption of its validity attends the ordinance. Kansas City v. Liebi, 298 Mo. 569, 252 S.W. 404, 28 A.L.R. 295. The record affirmatively shows a valid and proper public use, that of providing a site for an armory for those organizations of the Missouri National Guard stationed or located therein. The necessity for such taking and the extent of land to be taken for this purpose, absent the allegation and proof of fraud or bad faith, rest in the sound discretion of the City. State ex rel. State Highway Commission v. Curtis, 359 Mo. 402, 222 S.W.2d 64. This is a matter of discretion to be determined by the legislative authority, and such discretion, at least if not abused or arbitrarily exercised is not subject to judicial review. City of St. Louis v. Senter Commission Co., 336 Mo. 1209, 84 S.W.2d 133.

The appellant does not contend that in condemning the land for the admittedly valid and proper purpose of providing an armory for the National Guard organizations, the City is guilty of fraud or bad faith, nor does he contend that the City has abused or arbitrarily exercised its legislative authority in this respect, although he does make reference in his brief by way of argument that in his opinion all the land would not be needed for the National Guard Armory alone. Neither does appellant contend that if the City permitted the United States to use a part of the land at some time in the future to train members of its reserve military forces that this use would not be a public use. In effect he takes the position that it would be a public use by contending that if the United States needs his land for this purpose it should be the condemnor and not the City. This narrows the question to whether the appellant can defeat the condemnation of his land by the City for a public use and for a purpose which it is authorized to exercise the right of eminent domain, by offering to show that at some future time the City may attempt to permit the United States to use a portion of the land for a public use, at least as far as the United States is concerned.

We do not have here the usual case where the landowner contends that the ulterior purpose of the condemnation is to devote the land to a use not public. As a general rule the purpose of the condemnation, as distinguished from the motive, is a legitimate subject of judicial investigation. Kansas City v. Hyde, 196 Mo. 498, 96 S.W.

201, 7 L.R.A.,N.S., 639; Kansas City v. Liebi, supra, 298 Mo. 569, 252 S.W. 404, 28 A.L.R. 295; City of Kirkwood v. Venable, 351 Mo. 460, 173 S.W.2d 8. But the evidence offered by the appellant does not establish that there is any likelihood that Kansas City will devote any part of the property to a use not public. Neither does appellant's evidence tend to prove that there is any probability that Kansas City will permit the use of any part of the land or the facilities thereon by the United States unless it is authorized to do so by the Constitution and laws of Missouri. In making that determination, if the occasion should ever arise, the fact that the title to the land was obtained by condemnation would necessarily be a matter to be taken into consideration for whatever bearing on the question it might have.

■ From the entire record it is clear that the City of Kansas City is seeking to take the land in question by condemnation for a public use and for a purpose for which it has been delegated the authority to exercise the right of eminent domain, that is, to provide an armory for the organizations of the National Guard of Missouri stationed or located therein. It is also reasonably apparent that sometime in the future the City may attempt to work out cooperative agreements with the United States for the development and operation of the armory site, providing that it is authorized by law to do so. But if the City is not authorized to enter into the contemplated cooperative agreements with the United States, the land will be used only as a site for an armory for the organizations of the National Guard of Missouri stationed or located in Kansas City, and if the City is entitled to enter into the agreements the land will continue to be used for a public use, and appellant is not entitled to object to the City carrying out a lawful act.

■■ This case does not present the situation found in Kansas City v. Hyde, supra. There the evidence of the landowner concerning the purpose of the condemnation established that the use to be made of the land sought to be condemned would be a private use. But here the record shows a taking by the City within its delegated powers for a proper public use. The courts should not in such circumstances anticipate a possible improper use sometime in the future. The objection to such future use, if attempted and if outside the powers of the City, may then be made by those entitled to do so, but it is not a proper objection to the right to maintain the condemnation proceeding under the circumstances in this case. This court cannot speculate what part of the land might be used improperly at some undetermined future date (assuming that appellant is correct in his contention that the alleged use by the United States would be improper), and allocate a portion for the proper use and disallow the condemnation proceedings as to the remaining portion. We must assume, absent proper allegations and proof (or the offer thereof), which are not present in this case, that all the land condemned is necessary in the legal sense for the public use for which the City has the right of eminent domain.

Appellant relies primarily on State ex rel. Trombley v. Humphrey, 23 Mich. 471, and Kohl v. United States, 91 U.S. 367, 23 L. Ed. 449, in support of his position that Kansas City cannot condemn his land for the support of the armed forces of the United States. In the Trombley case it was held that the State of Michigan could not condemn land for the exclusive use of the United States. The Kohl case involved the right of the United States to exercise the right of eminent domain, but by way of dictum it expressed approval of the rule announced in the Trombley case. These cases have been distinguished by numerous later cases, but in any event they do not control here. In the Trombley case the land was to be taken for the exclusive use of the United States and it was held that the State of Michigan had no right to exercise its power of eminent domain for that purpose alone. In the present case the record shows a taking for a public use and for a purpose which the City has been delegated the right of

eminent domain. Under the circumstances here, we will not anticipate a possible improper use. The first two assignments of error are overruled.

■ ■ Appellant also contends that this condemnation proceeding contravenes the purpose and intention òf the proposition whereby Kansas City voted bonds "for the construction and equipping of an armory, drill hall and headquarters and the acquisition of lands therefor" in the sum of $500,000. His position is that the "bond authorization plainly contemplates the construction of only one single building" and that the City contemplates erecting three separate buildings, or a "series of armories."

The possible improper use in the future of the armory bond fund is not a question for determination in this condemnation proceeding. When the City condemns land for a public use it must, as a condition precedent to taking possession, pay to appellant, or make available to him for his use, the just compensation assessed and determined by the jury of freeholders provided for in the Charter of Kansas City. Mo.Const.1945, Art. I, § 26, V.A.M.S.; Kansas City v. Ward, 134 Mo. 172, 35 S.W. 600; Jasper Land & Improvement Co. v. Kansas City, 293 Mo. 674, 239 S.W. 864; State ex rel. City of St. Louis v. Sartorious, 340 Mo. 832, 102 S.W.2d 890. Appellant is fully protected insofar as this proceeding is concerned in that his land is not taken from him until just compensation, regardless of the source, is either paid or made available to him.

Appellant's next assignment of error is that the trial court erred in striking from the record and excluding testimony offered by him to show that parts of the land condemned were adaptable to uses not then permitted by the ˙zoning regulations of Kansas City.

■ ■ Appellant is entitled to "just compensation" for the taking of his land, Mo.Const.1945, Art. I, § 26, V.A.M.S., which, generally speaking, is what a reasonable buyer would give who was willing but did not have to purchase, and what a seller would take who was willing but did not have to sell. United States v. 11.06 Acres of Land, D.C., 89 F.Supp. 852; Metropolitan Street Ry. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860; City of Kansas City v. Bacon, 157 Mo. 450, 57 S.W. 1045. In determining the just compensation to which the owner is entitled, the jury may consider uses of the land for which it is reasonably suitable, having regard to the existing business wants of the community, or such as may be reasonably expected in the future. Missouri Pac. Ry. Co. v. Porter, 112 Mo. 361, 20 S.W. 568; Metropolitan Street Ry. Co. v. Walsh, supra; State ex rel. State Highway Commission v. Cox, 336 Mo. 271, 77 S.W.2d 116. At the time of the trial appellant's land was zoned for "two family residences." No challenge was made against the validity of the zoning regulation. Appellant offered, but was not permitted, to show that one portion of the property was adaptable to having a church or similar institution constructed thereon, and that another portion was adaptable to being used for a "clinic of modern type, such as a doctor's office."

■ ■ The measure of damages for the taking is to be determined as of the time of the taking. City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149; State ex rel. State Highway Commission v. Day, 226 Mo.App. 884, 47 S.W.2d 147. At that time the land was not available, and therefore, not "suitable," for the uses appellant offered to show because the zoning regulations of Kansas City prohibited its use for those purposes. The landowner could not, on the day of the taking, use the land for the purposes of having a˙church, a clinic or a doctor's office constructed thereon, and the just compensation to which an owner of condemned land is entitled when his property is taken by condemnation is regarded by law from the point of view of what the owner has lost, not what the condemnor has gained. The Grand Avenue Railway Co. v. People's Railway Co., 132 Mo. 34, 33 S.W. 472; St. Louis, Keokuk & North-

western Railroad Co. v. Knapp-Stout & Co., 160 Mo. 396, 61 S.W. 300; Clark v. United States, 8 Cir., 155 F.2d 157; United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206.

Appellant contends, however, that in the few cases in which this question has been considered, "it has been the unanimous view that a landowner is not absolutely prohibited from showing the value of his land for a proposed use, even though such use may be contrary to an existing zoning ordinance," and that the "only requirement for the admission of such evidence is the showing of a fair likelihood of a change or variance in the zoning." The cases in other jurisdictions support this position. City of Austin v. Cannizzo, Tex., 267 S.W.2d 808; City of Beverly Hills v. Anger, 127 Cal.App. 223, 15 P.2d 867; Long Beach City High School District v. Stewart, 30 Cal. 2d 763, 185 P.2d 585, 173 A.L.R. 249; Dunham v. Village of Canisteo, 278 App.Div. 743, 103 N.Y.S.2d 519; Hall v. City of Des Moines, Iowa, 62 N.W.2d 734; Annotation, "Zoning or other governmental regulations as to use of property as a factor in determination of damages in eminent domain," 173 A.L.R. 265; 4 Nichols, Eminent Domain (3rd ed.), § 12.322.

Appellant introduced evidence to show that across the street from his land there was a large church, and that in the neighborhood there was a garden type apartment development, but it is not shown if there were variances or changes made in the zoning restrictions to permit the construction of these buildings. This evidence can hardly be held to show a remote or speculative possibility of a change or a variance in the zoning restrictions much less a fair likelihood of such a change. Merely presenting evidence that nearby there exists buildings other than those permitted by the present zoning regulations is not sufficient to remove from the realm of speculation the possibility of a change in the zoning regulations, and under the circumstances here, if we accept appellant's theory as to what should be the rule, the trial court properly excluded the testimony offered to show uses which were not permitted by the present zoning regulations.

Appellant also asserts error in striking out certain testimony of his witness Edward T. Mulhern. In order to obtain a complete picture of the circumstances of the trial court's ruling, it is necessary to consider the testimony of this witness in connection with some of the testimony of appellant's witness Joseph F. Rule.

Appellant's expert witness Rule produced a map of the property on which he had drawn prospective streets and a total of 145 lots to show that he considered a substantial portion of the land adaptable to being lotted and sold. He estimated the value of the two portions of the land which he had not broken down into lots at $3,000 and $2,000, and the value of the portion broken down into streets and lots at $73,000. He was then asked how he arrived at the figure of $73,000. The City objected to this witness testifying concerning "the taking of this property and spending money on it in a development, the cost of which is speculative and then saying after it is developed it will be worth so much money." The objection was sustained and the appellant did not pursue the matter further. Appellant then asked the witness if he had made a study of the cost of improving the area and received an affirmative reply. The City objected to testimony concerning "the cost of improving the area," but the court overruled this objection, apparently because a witness for the City had previously testified that the cost of improving the land would be prohibitive. The witness was then permitted to state what he considered to be the cost of grading the area, paving and curbing the proposed streets and for continuing and connecting the sewers. He estimated the total cost of improving the area would be $89,680 which he contended was in line with other developments. From these rulings it is clear that the court sustained the City's position that it was improper for the witness to testify concerning the value of the property after improvements were

made, the cost of which would be speculative.

Subsequently, appellant's witness Mulhern, also an expert witness, testified that the two unlotted areas on the map prepared by Rule had a value of $3,000 and $2,000, and that the value of the portion broken down into lots was $70,000. He was then asked how he arrived at the figure of $75,000 for the total area and he answered as follows: "I arrived at that figure this way. Number 1. Sewers are in and our cost to put in disposal will vary some on it,—between $40,000.00 and $60,000.00 if you put in something acceptable to the City. That is one of the big points I based my entire value on that ground. It is very difficult to find methods of getting sewers unless you have the City sewers. So taking Number 1 on the platted ground and taking 145 lots on the plat that you supplied me there. I figured my improvement cost to put in streets and sewers at $90,000.00. That figure was based on what we have just completed on 100 houses in Clay out in Kansas City, Missouri, North. Then I placed my value of $70,000.00 on the platted area and also took the engineer and master plan that has been done by registered engineers. I place that at $70,000.00 I broke it down this way. The ground at the present time is zoned for duplexes. That would make my improved cost $1,100.00 per lot based on 55 foot lots. My per unit cost for each unit of duplexes is $550.00, or giving me $20.00 front foot for my ground. The F.H.A. —" Counsel for the City interrupted at this point and objected on the ground that "this witness is doing just what Your Honor sustained an objection to. He is figuring the cost of improving the land and making something different and figuring—then figuring what it would be worth after it was changed into that." The court sustained the objection and struck out the answer of the witness. By simple addition and division it can readily be seen that the witness added his estimated cost of the improvements ($90,000) to his valuation of the property ($70,000), the sum of which, when divided by the number of lots, gave him $1103.42, which in round figures made his "improved cost $1100 per lot."

Appellant contends that the court erred in striking the testimony of witness Mulhern "with respect to the method by which he arrived at his valuation for the land in question" because, as an expert witness, he was entitled to state the basis for his appraisal which constituted a reasonable business approach which should have been submitted for consideration by the jury.

In a condemnation case, an expert witness, giving an opinion as to value of property, may testify concerning the basis for arriving at his opinion. State ex rel. State Highway Commission v. Pope, 228 Mo. App. 888, 74 S.W.2d 265; II Wigmore, Evidence, (3rd ed.) § 652; Lewis, Eminent Domain (3rd ed.) § 654; 5 Nichols, Eminent Domain (3rd ed.) § 18.45 [1]. But a witness may not, under the guise of giving the basis of his opinion, lug in evidence which is incompetent or irrelevant, nor should he be permitted to go into the grounds of his opinion in such a way as to confuse or mislead the jury. The scope of such examination is a matter properly committed to the sound discretion of the trial judge, who should be careful to see that false issues are not suggested to the jury and that it is not otherwise misled. United States v. 25.406 Acres of Land, 4 Cir., 172 F.2d 990. The landowner may and did show that the land was adaptable for use as building sites. State ex rel. State Highway Commission v. Graham, Mo.App., 74 S.W.2d 493. But the measure of just compensation to which the owner of land is entitled by law to receive for the taking of his land by condemnation is not the value of the land at some future date after it has been improved at considerable cost to make it usable for a purpose for which he claims it to be reasonably adaptable. The Sedalia, Warsaw & Southern Railway Co. v. Abell, 18 Mo.App. 632; 4 Nichols, Eminent Domain (3rd ed.) § 12.3142. It is the present value for the adaptable use that should be determined by the jury. It was not proper for this witness, under the guise of explaining how

he arrived at his expert opinion to add his estimated value of $70,000 for the land shown on the map to be broken down into streets and lots, to his estimate of $90,000 necessary for improvements, and then by dividing by the number of proposed lots show that each of the 145 lots would have what he called an "improved cost" of $1,100. In effect, this witness attempted to convey, or at least it had the effect of conveying, to the jury that the present value of the land included the cost of developing it. "Certainly, under the guise of explaining an answer, a witness should not be permitted at least on direct examination, to give testimony otherwise incompetent, and thus place before a jury improper evidence to be considered by them in arriving at a verdict." State ex rel. State Highway Commission v. Pope, supra. The ruling of the court in striking the testimony of this witness was proper.

▮▮▮ Appellant's last assignment is that the court erred in excluding evidence of the sale price of two tracts of land claimed by him to be comparable to the land condemned. One tract was described only as "the property which Mr. Dible bought at 79th Street between Holmes and Oak." The City objected to the admission in evidence of the sale price of this tract on the ground that "it is many miles from this area" and because "it is too remote and (there are) entirely different conditions surrounding it and (it is) not comparable to the property." The court sustained the objection, and appellant's offer of proof was as follows: "Landowner offers to prove that Mr. Dible purchased 40 acres of land at 79th Street between Holmes and Oak on May 19 for the purchase price of $115,000, or average of $2,875.00 an acre." The second tract was described only as "the property of Shultzel-Harding bought at 62nd and Elmwood." The City objected to the admission in evidence of the sale price of this second tract "for the same reason" and because "it is not comparable in location or surroundings." The court then stated that he was not familiar with the terrain and location of this second tract, and when advised that it was one and

one-half miles distant, he sustained the objection of the City, and in doing so commented that he had sustained an objection of appellant to the City showing the sale price of a tract of land that was less distant. Appellant made no offer of proof concerning the second tract.

Evidence of the sale price of property similarly located to that involved, and made in the neighborhood reasonably near the time of the taking, is admissible to aid the triers of fact in determining the compensation to which the owner is entitled for the taking of his property. Markowitz v. Kansas City, 125 Mo. 485, 28 S.W. 642; Kansas City & Grandview Railway Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, 84 A.L.R. 1477; City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W.2d 853. The importance of evidence of the sale price of other land depends upon the degree of nearness of the sale in point of time and the proximity of the property, of the similarity in location, and in the use to which the property may be adaptable. In determining the admissibility of evidence of this nature there necessarily must be considerable discretion on the part of the trial judge. In order to establish that error resulted in rejecting evidence of this nature, it is incumbent on the party offering it to show by offer of proof or otherwise that the evidence is admissible. From the record before us we cannot say that the trial court committed prejudicial error in refusing to permit the introduction of evidence concerning these two sales.

We find no prejudicial error in the record. The judgment of the trial court confirming the assessment and award of just compensation made by the jury of freeholders and vesting in Kansas City the title to the property described in Ordinance 17161 is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.