STATE ex rel. C.F. WHITE FAMILY PARTNERSHIP et al., Relators,

v.

The Honorable Marco ROLDAN, Respondent.

No. SC 89148.

Supreme Court of Missouri, En Banc.

Dec. 16, 2008.

Robert Denlow, Paul G. Henry, Denlow & Henry, Clayton, MO, for Relator.

Steven E. Mauer, Jeremiah J. Morgan, Michelle C. Campbell, Bryan Cave LLP, Kansas City, Collin A. Dietiker, Assistant City Counselor, Independence, MO, for Respondent.

LAURA DENVIR STITH, Chief Justice.

Respondent, the Honorable Marco Roldan, held that because the parties to the underlying condemnation action filed exceptions to the commissioners' report of damages, he would not determine whether the property qualified for an award of heritage value as an element of just compensation under section 523.061,[1] pending the jury's determination of damages pursuant to the exceptions. Relators petitioned this Court to direct Respondent to determine heritage value prior to the jury trial on exceptions. This Court issued its preliminary writ.

---

1. Unless otherwise stated, all statutory references are to RSMo Supp.2007.

Missouri statutes do not preclude a trial judge from determining whether a condemned property qualifies for heritage value merely because one or more parties to the condemnation action have filed exceptions to the commissioners' report of damages. To the contrary, section 523.061's direction that the trial judge determine heritage value imposes an independent obligation to do so, without regard to whether exceptions have been filed. But, here, Respondent was unable to determine heritage value because he had failed to ask the commissioners to determine whether the property had been owned by the White family for fifty years or more. A finding of such ownership is a factual prerequisite to a finding of heritage value. Further, section 523.039.3 is specific that this finding must be made by the commissioners or the jury; it does not give the judge the authority to make the determination of years of ownership where, as here, the judge should have, but did not, request the commissioners to so determine.

This Court, therefore, directs Respondent to issue an amended order to the commissioners directing them to determine whether Relators' property has been in the White family for fifty years or more. Respondent then should determine Relators' motion requesting that heritage value be added to the damages found by the commissioners to determine just compensation, without regard to whether exceptions have been filed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Relators, the C.F. White Family Partnership and Lupton Living Trust, own 45 acres of land in Independence, Missouri. Through condemnation, the city of Independence sought 15 of those acres. Relators allege that the property has been in the White family for more than fifty years.

On October 30, 2007, Respondent entered an order of condemnation and appointed commissioners to determine the value of the property taken. He instructed the commissioners to:

meet, qualify according to law, view the property after providing no less than ten (10) days notice to the parties prior to the viewing and forthwith return, under oath, to the Circuit Court Administrator, their report of such assessment of net damages, if any, which the Defendants may sustain by reason of the appropriation, taking into consideration the benefits to be derived by the owners, as well as the damages sustained, and setting forth and stating the amount of net damages allowed the said Defendants, together with a specific description of the property for which such damage was assessed.

In their report, the commissioners assessed the damages for taking Relators' property at $1,415,000. Their report also states:

*The commissioners herein state they have not made a determination whether a homestead taking has occurred or whether heritage value is payable* and the amount of the award for each foregoing parcel does not include any amount for a homestead taking or for heritage value.

(emphasis added). Relators thereafter moved for a determination whether the property qualifies for heritage value and filed exceptions to the commissioners' report. The City also filed exceptions. Respondent then issued his order stating that he "decline[d] to rule on Defendant's Motion for Assessment of Heritage Value at this time by reason of the filing of exceptions," which would necessitate a jury trial to determine damages.

Believing that sections 523.039 and 523.061 entitle them to a determination of

the heritage value of their property and payment of just compensation into the court regardless whether exceptions are filed, Relators petitioned this Court to issue a writ of prohibition directing Respondent to determine the heritage value of their property and to award them just compensation.

## II. STANDARD OF REVIEW

■■■ Prohibition is an original remedial writ brought to confine a lower court to the proper exercise of its jurisdiction. *State ex rel. Lebanon School Dist. R–III v. Winfrey*, 183 S.W.3d 232, 234 (Mo. banc 2006). This Court has the authority to "issue and determine original remedial writs." Mo. Const. art. V, sec. 4.1. A writ of prohibition is appropriate to preserve "the orderly and economical administration of justice," [2] or where there is "an important question of law decided erroneously that would otherwise escape review by this Court, and the aggrieved party may suffer considerable hardship and expense as a consequence of the erroneous decision." [3] Where, as here, issuance of the writ depends on the interpretation of a statute, this Court reviews the statute's meaning *de novo*. *Delta Air Lines, Inc. v. Dir. of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995). In so doing, this Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute. *Id.*

## III. DISCUSSION

A. *Relevant Statutory Provisions Governing Award of Just Compensation for Property with Heritage Value*

Missouri's Constitution provides that "private property shall not be taken or damaged for public use without just compensation." **Mo. Const. art. I, sec. 26.** In the absence of a constitutional definition of "just compensation," this Court has defined it as:

> what a reasonable buyer would give who was willing but did not have to purchase, and what a seller would take who was willing but did not have to sell.... The measure of damages for the taking is to be determined as of the time of the taking.

*In re Armory Site in Kansas City*, 282 S.W.2d 464, 470 (Mo.1955) (citations omitted). In 2006, the legislature enacted a statutory definition of just compensation:

> Just compensation for condemned property shall be ...
>
> (1) An amount equivalent to the fair market value of such property;
>
> (2) For condemnations that result in a homestead taking, an amount equivalent to the fair market value of such property multiplied by one hundred twenty-five percent; or
>
> (3) *For condemnations of property that result in any taking that prevents the owner from utilizing property in substantially the same manner as it was currently being utilized on the day of the taking and involving property owned within the same family for fifty or more years,* an amount equivalent to the sum of the fair market value and heritage value....

**Sec 523.039** (emphasis added). "The property owner shall have the burden of proving to the commissioners or jury that the

---

2. *State ex rel. Bloomquist v. Schneider*, 244 S.W.3d 139, 141 (Mo. banc 2008), *quoting, State ex rel. Noranda Aluminum, Inc. v. Rains*, 706 S.W.2d 861, 863 (Mo. banc 1986).

3. *State ex rel. Wolfrum v. Wiesman*, 225 S.W.3d 409, 411 (Mo. banc 2007), *quoting, State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 577 (Mo. banc 1994).

property has been owned within the same family for fifty or more years." *Id.* "Heritage value" is defined in section 523.001.2 as:

the value assigned to any real property, including but not limited to real property owned by a business enterprise with fewer than one hundred employees, that has been owned within the same family for fifty or more years, *such value to be fifty percent of fair market value.*

(emphasis added). Thus, heritage value is the additional value given to property that has been held within the same family for fifty or more years. If the taking prevents the owner of such property from utilizing the property in substantially the same manner as it currently is being utilized, the result under section 523.039 is that the amount of the heritage value shall be added to fair market value to determine just compensation.

### B. The Filing of Exceptions Does Not Moot the Court's Duty to Determine Heritage Value.

■ Relators claim that the condemned property has been in their family for more than fifty years and that just compensation for it requires payment of the total of the property's fair market value plus its "heritage value." Respondent did not reach this issue because he believed that once either party filed exceptions to the commissioners' report, that filing mooted his statutory duty to determine whether the property had heritage value and whether that value should be added to the damages found by the commissioners to determine just compensation. This Court disagrees. Section 523.061 unambiguously states:

After the filing of the commissioners' report pursuant to section 523.040, the *circuit judge* presiding over the condemnation proceeding *shall apply the provisions of section 523.039 . . . and shall determine whether heritage value*

*is payable and shall increase the commissioners' award to provide for the additional compensation* due where . . . heritage value applies, in accordance with the just compensation provisions of section 523.039. If a jury trial of exceptions occurs under section 523.060, the circuit judge presiding over the condemnation proceeding shall apply the provisions of section 523.039 and shall determine . . . whether heritage value is payable and shall increase the jury verdict to provide for the additional compensation due . . . where heritage value applies, in accordance with the just compensation provisions of section 523.039.

*Id.* (emphasis added).

The plain meaning of the italicized language just quoted is that upon the filing of the commissioners' report, the judge "shall" apply the provisions of section 523.039 and "shall" add heritage value and increase the commissioners' award to provide for additional compensation if it so finds. The statute nowhere makes this duty conditional on no party filing exceptions. Indeed, were it to do so, it could cause a party to file frivolous exceptions merely to delay the determination of heritage value until after a jury trial. Rather, the first clause of section 523.061 requires a determination of whether heritage value is payable and an increase in the commissioners' award appropriate, and the second sets forth how to proceed in a jury trial of any exceptions filed.

■ Respondent is correct that if the jury awards a different amount of damages than did the commissioners, the trial court then would have to apply its heritage value determination to a different damages figure. This Court disagrees that this minor duplication of effort, however, provides a basis to ignore the clear intent of the

legislature as expressed in the statute. *See State v. Rowe,* 63 S.W.3d 647, 650 (Mo. banc 2002) (court cannot, under the guise of discerning legislative intent, rewrite statute, but must apply plain meaning of clear, unambiguous statute). Moreover, the determination that heritage value is payable might cause a landowner to withdraw its exceptions, and the contrary determination might cause the condemning authority to do likewise. It is up to the legislature, not this Court, to weigh these and other considerations in determining what duties to impose on the court and the commissioners or jury.

### C. Section 523.039(3) gives the Commissioners and Jury Authority to Determine Whether the Fifty–Year Ownership Requirement is Met.

Although Respondent erred in refusing to determine whether Relators' property qualified for heritage value simply because exceptions were filed, this does not in itself entitle Relators to the order they request directing Respondent to determine whether the property has been in the White family for fifty years or more and, if so, whether it qualifies for heritage value. Section 523.039.3 is explicit that "the property owner shall have the burden of *proving to the commissioners or jury* that the property has been owned within the same family for fifty or more years." **Sec. 523.039.3** (emphasis added). Section 523.061 then provides that the judge shall apply the provisions of section 523.039 in determining whether heritage value should be added to the damages found by the commissioners in determining just compensation. **Sec. 523.061.**

Here, the commissioners were not asked to, and expressly stated in their report that they did not, determine whether the property had been in the White family for fifty years or more.[4] The trial court, therefore, had no factual basis on which to make a determination whether Relators' property qualified for heritage value or whether that value should be added to the damages awarded in determining just compensation.

Relators suggest that it is a simple matter for Respondent to make the determination of how long the property has been held by the owner's family, and that it makes more sense for the judge to determine both that issue and whether the property otherwise qualifies for heritage value, than to have the first issue determined by the commissioners and the latter by the judge.

It is not up to this Court to determine what procedure would be most efficacious; rather, it is our duty to determine what procedure the relevant statutes require. Here, section 523.039.3 unambiguously puts solely in the hands of the commissioners or jury the determination of whether the property has been owned within the same family for fifty or more years. *Id.* The trial judge has no authority to make that determination in their stead.

Respondent did not err in refusing to determine heritage value absent a determination of length of ownership by the commissioners or jury. But, Respondent did err in failing to direct the commissioners to determine whether the property in question had been in the White

4. In fact, the commissioners' report says they did not reach the issue of heritage value, but under the statute the only question they can determine is the factual question whether the property has been in the family for the requisite period, not whether it qualifies for heritage value. As discussed above, the latter determination is for the judge and involves issues in addition to the length of time the property has been in a particular family. *See secs.* 523.061, 523.039, 523.001.

family for fifty years or more, as he should have done under section 523.039.3 in this circumstance. "It is the province of the court which appoints the Commissioners to inform them of their duties and responsibilities and to declare the law to them." *State ex rel. State Highway Com. v. Klipsch*, 365 S.W.2d 76, 81 (Mo.App.1963).[5] Absent a direction to do so by the court, the commissioners had no authority to determine how long the White Family had owned the property, as they implicitly recognized in their report. This improperly deprived Relators of the opportunity to have this issue determined by the commissioners as provided in section 523.039.3.[6]

## IV. CONCLUSION

For the reasons set forth above, this Court makes its writ permanent as modified. Respondent shall direct the commissioners to issue an amended report that includes a determination whether the property has been in the White family for fifty years or more in addition to their determination of damages. Upon receipt of that amended report, Respondent shall determine Relators' motion asserting that the property qualifies for heritage value, which should be added to damages to determine just compensation.

PRICE, TEITELMAN, RUSSELL and WOLFF, JJ., and HOFF, Sp.J., concur.

BRECKENRIDGE, J., concurs in part and dissents in part in separate opinion filed.

FISCHER, J., not participating.

PATRICIA BRECKENRIDGE, Judge, concurring in part and dissenting in part.

I concur with the majority's finding that the trial court erred in failing to direct the commissioners to make the factual findings necessary to determine heritage value. In addition, I agree that, without the factual findings of the commission, the trial judge lacked the ability to make a determination as to heritage value. I disagree, however, with the majority's holding that issuance of a writ of prohibition is required and, therefore, dissent from the majority's opinion making the preliminary writ absolute.

5. *See also* **Mo. Condemnation Practice § 1.23 (MoBar 3d ed.1996)** ("commissioners are not required by statute to follow any particular procedure in assessing damages, other than to view the property. Section 523.040. Thus, the custom and practice of the local jurisdiction and the *instructions from the judge dictate this phase of the proceeding* " (emphasis added)).

6. Relators further petition this Court that, if it determines that heritage value is payable and finds·that it must be added to the damages found by the commissioners to reach just compensation, then it should direct Respondent to order this full amount of just compensation to be paid to the clerk pending a trial of the exceptions filed. *See sec.* 523.061 (court "shall increase the commissioners' award to provide for the additional compensation due where a homestead taking occurs or where heritage value applies, in accordance with the just compensation provisions

of section 523.039"). Respondent counters that section 523.055 was not amended when the provisions regarding heritage value were added, and it still requires that possession of the property shall change "where the condemnor has paid into the office of the clerk of the circuit court the amount of damages assessed by commissioners pursuant to law" and does not require that the full amount of just compensation be paid into court pending the trial of exceptions.

It is premature for this Court to reach that issue, for this is a writ proceeding, not an appeal. This Court's duty is only to confine the trial court to its authority and direct it to exercise that authority, not to give an advisory opinion as to what orders it should issue should it be determined that the property has been in the White family for fifty years or more and that it otherwise qualifies for heritage value.

### Commission Findings Functus Officio

The majority finds that the language of section 523.061 [1] requires the trial judge to determine heritage value and that this determination is not discretionary. I agree with this statutory interpretation and recognize the mandates placed upon the trial judge within chapter 523. The majority, however, then concludes that because of this mandatory language and the trial court's failure to comply, remand to the commission for factual findings is necessary. I respectfully disagree.

As both parties have filed exceptions to the commission's report, there will now be a jury trial to make a new appraisement and to make the factual findings necessary to determine heritage value. *See* sections 523.050 and 523.060. Upon the filing of exceptions to the commission's report, Relators are entitled to a jury trial as to the damages sustained by them, the report of the commissioners becomes "functus officio", [2] and the cause then stands "as though no commissioners had ever been appointed." *State ex rel. State Highway Com'n v. Deutschman*, 346 Mo. 755, 142 S.W.2d 1025, 1028 (1940). The question of damages, including the making of factual findings necessary to determine heritage value, will be tried *de novo* by the jury as though no commissioners had ever been appointed. *See State ex rel. State Highway Commission v. Meadows*, 444 S.W.2d 225, 226 (Mo.App.1969).

Here, since the report of the commissioners has become functus officio, no purpose would be served by having the commissioners amend their report. *State ex rel. State Highway Commission v. Polk*, 459 S.W.2d 346, 351 (Mo.1970). As any

findings by the commission will be a nullity now that there will be a jury trial, remand back to the commission is superfluous.

### Commission Findings Lack Practical Value

In addition to the factual findings of the commission as to heritage value being a legal nullity, remand will also result in commission findings that have no practical value. Relators contend that the factual findings by the commission as to heritage value will be practically relevant. They argue that these findings will impact the proceedings because the condemnor, the city, is required to pay to the clerk the amount assessed, which they assert includes heritage value. Review of section 523.040, however, demonstrates that the payment required by the condemnor to the clerk does *not* include heritage value.

Chapter 523 is structured in such a way to allow the condemnor to gain possession of the property despite disputes over the amount of damages. *See* section 523.050. Following the commission's determination of damages, the condemnor must pay to the clerk the amount of "damages assessed" by the commission. Section 523.040. Once this payment is made, the condemnor is entitled to possession, despite the filing of exceptions by either party. *See* sections 523.050 and 523.055. In the event exceptions are filed, the determination of damages will then proceed to trial by jury for a determination of the final amount due. Sections 523.050 and 523.060.

While the commission determines the damages and the factual findings relevant to heritage value, it does not determine

1. All references are to RSMo Supp.2007 unless otherwise noted.

2. Black's Law Dictionary (8th ed.2004) defines *functus officio* as: "(Of an officer or

official body) without further authority or legal competence because the duties and functions of the original commission have been fully accomplished."

heritage value. *See* section 523.061. As such, the damages assessed by the commission, which must be paid to the clerk, inherently cannot include heritage value. The commission determines damages, section 523.040, and makes the factual findings necessary to determine heritage value, section 523.039, but only the trial court makes the actual determination of heritage value. Section 523.061. The trial judge increases the commissioners' award after he establishes heritage value. Section 523.061. The amount due to the clerk, however, is based only on the commission's assessments, see section 523.040, not the findings of the commission, and, therefore, does not include heritage value.

Because the amount of the commissioners' award to be paid to the clerk does not include heritage value, remand back to the commissioners will have no impact on any actions taken by either party. Therefore, there is no relevance to the commission's factual findings as they relate to heritage value *unless* the trial judge relies on those findings to determine an amount due. Here, as the trial judge will not be relying on the commission's findings due to the impending jury trial, the factual findings of the commission have no effect.

### Writ of Prohibition Not Appropriate

"Prohibition is an extraordinary remedy to prevent exercise of extra jurisdictional power and is *not* a writ of right." *State ex rel. K–Mart Corp. v. Holliger*, 986 S.W.2d 165, 169 (Mo. banc 1999) (emphasis added). As such, this Court must exercise caution when issuing writs of prohibition.

This Court will issue a writ of prohibition when the circumstances fit within one of three categories. *State ex rel. Noranda Aluminum, Inc. v. Rains*, 706 S.W.2d 861, 862 (Mo. banc 1986). First, this Court has entertained writs of prohibition "where there is a usurpation of judicial power

because the trial court lacks either personal or subject matter jurisdiction." *Id.* The second category of cases where this Court will issue a writ of prohibition is when "there exists a clear excess of jurisdiction or abuse of discretion such that the lower court lacks the power to act as contemplated." *Id.* Under this second category, not every violation of a statute on the part of a court constitutes an act in excess of jurisdiction. *See State ex. rel. Morasch v. Kimberlin*, 654 S.W.2d 889, 892 (Mo. banc 1983).

The third and final category has perimeters described by this Court in *Noranda:*

> When this Court is presented with an action that is not an abuse of discretion or excess of jurisdiction in the customary fashion in which we have interpreted those concepts, we occasionally will issue a writ of prohibition if the party can satisfy a number of conditions-often falling under the rubric of no adequate remedy by appeal. This category often acts as a mechanism for deciding an important legal question that routinely escapes this Court's attention because of the litigation process and the lack of interest in some instances to prosecute an appeal at a client's expense. It might be noted that there are no interlocutory appeals in civil cases in Missouri, which in other jurisdictions might cover some of the situations in this third category. Thus, where there is an issue which might otherwise escape this Court's attention for some time and which in the meantime is being decided by administrative bodies or trial courts whose opinions may be [sic] reason of inertia or other cause become percedent [sic]; and, the issue is being decided wrongly and is not a mere misapplication of law; and, where the aggrieved party may suffer considerable hardship and expense as a consequence of such action, we may

entertain the writ for purposes of judicial economy under our authority to "issue and determine original remedial writs." Mo. Const. art. V, § 4.1.

706 S.W.2d. at 862–63 (footnote omitted).

Applying the three categories of circumstances where this Court will issue a writ of probation to the facts of this case, the first question is whether the trial court, here, "lack[ed] either personal or subject matter jurisdiction." *Id.* at 862. There is no claim of lack of personal or subject matter jurisdiction, so there is no entitlement to issuance of a writ under the first category.

The second category of circumstances where a writ of prohibition may issue is when there "exists a clear excess of jurisdiction or abuse of discretion such that the lower court lacks the *power* to act as contemplated." *Id.* As noted above, not every violation of a statute constitutes an act in excess of jurisdiction on the part of a court. *See Morasch,* 654 S.W.2d at 892. I agree with the majority that the trial court misapplied the law in not directing the commissioners to make the required finding related to heritage value, but that error was not an act in excess of jurisdiction or an abuse of discretion. As such, this Court can properly issue a writ of prohibition only if the third category applies.

Under the third category, this Court can issue a writ of prohibition only if a number of conditions are satisfied. The first condition is when there is no adequate remedy by appeal. The remedy of appeal is not adequate when, as in this case, there is an important legal question that would otherwise escape this Court's attention because of the litigation process. The trial court's failure to order the commission to make a factual finding necessary to determine heritage value will escape review because the jury's subsequent finding supersedes the commission's finding. Nevertheless, even if this is a case where there is no adequate remedy on appeal, there are additional conditions that also must be met. A writ of prohibition is not available under the third category unless the writ also addresses an "issue [that] is being decided wrongly and is not a mere misapplication of law," and the writ is necessary to prevent a situation "where the aggrieved party may suffer considerable hardship and expense as a consequence of such action." *Noranda,* 706 S.W.2d at 862–63.

These last two conditions, under category three, preclude the issuance of a writ in this case. The issue that the majority found was wrongly decided, the failure to authorize the commission to make a necessary factual finding, was a mere misapplication of law by the trial court. Additionally, the aggrieved party, Relators, will not suffer considerable hardship and expense as a consequence of the trial court's error because the factual findings necessary to determine heritage value will be made by the jury. In fact, the issuance of the writ will cause unnecessary expense rather than eliminate it as it will require additional, superfluous proceedings. Because this case does not comply with two of the three conditions necessary for issuing a writ of prohibition under category three, a writ should not issue.

While a writ of prohibition is appropriate if it is necessary to preserve "the orderly and economical administration of justice," *id.,* that is not the circumstance here. The orderly and economical administration of justice is not promoted by requiring remand to the trial court for the commission to make factual findings when the filing of exceptions results in a jury trial on these same matters, and the commission's findings will not be utilized to determine the heritage value. To the contrary, this Court's writ directs the trial

court to conduct unnecessary proceedings, as opposed to promoting judicial economy.

## Conclusion

The interpretation by the majority of the newly enacted statutes pertaining to heritage value is sound. In addition, such interpretation is beneficial to offer clarification of the duties that are imposed on the trial court by the statutes related to determining heritage value as the applicable statutes are both new and lacking in clarity. The failure of the trial court to comply with the statute, however, is not in and of itself a circumstance where a writ of prohibition should issue.

Here, the trial court explicitly "declined" to send the question of heritage back to the commission when the request to do so occurred *after* the issuance of the commissioners' report and *after* the filing of exceptions by both parties. While the trial court erred in its initial order to the commission, the trial court's decision not to correct that error by requiring further action by the commission is not a circumstance involving ignorance of the law on the part of the trial court but, instead, the trial court declining to order superfluous proceedings.[3]

The writ of prohibition will require the commission to make factual findings that will have no effect in determining the damages due to the Relators. The prior filing of objections to the commissioner's report by both Relators and the city make any findings by the commission a nullity since the factual findings that will actually be used to determine heritage value will be made by a jury. Any findings by the commission as to heritage value have no impact during the interval between the commission's report and the jury trial as

the amount required to be paid by the City prior to gaining possession does not include heritage value. The circumstances of this case do not fit within any of the three categories this Court has recognized for the "extraordinary remedy" of a writ of prohibition. Therefore, I respectfully dissent from the majority's opinion making the preliminary writ of prohibition absolute.

---

3. Both parties already had filed exceptions prior to Relators raising the issue of heritage value and, while requiring the commission to

make factual findings as to heritage value might aid settlement, this Court should not issue a writ merely to facilitate that goal.